## Olson, Appellant, *v.* Olson.

*Divorce—Desertion—Insufficient evidence to sustain decree.*

Separation is not desertion.  Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert wilfully, and maliciously persisted in without cause for two years.  What may have been desertion in its inception, but has become a separation with mutual consent within two years, is not ground for divorce.  The mutual consent that will prevent a divorce upon the ground of desertion may be inferred from the conduct of the parties, and need not be put in the form of a solemn written agreement.

128, (1905).]                 Syllabus—Arguments,

Uncontradicted testimony may not be rejected capriciously in a divorce case any more than in other cases; but courts are not bound to accept as absolute verity the testimony of a libellant that the libellee wilfully and maliciously deserted him, such testimony being given in answer to leading questions and without being subjected to the test of cross-examination, where, in addition to its inherent weakness or improbability, a natural inference may be drawn from his conduct that is wholly inconsistent with it.

Courts ought never to sever the marrigae contract, but where the application is made in sincerity and truth for the causes set forth and no other, and fully sustained by the testimony.

A husband, a libellant in divorce, alleging desertion, testified that when he returned from work at noon on a day named, he found that most of the furniture of his house had been taken away; that he had seen his wife but twice since that time; that she gave no reason for leaving him, and that he knew of none. He said nothing of previous disagreements and it did not appear that he made any effort to find out why she left him, or to invite her back. On the contrary, it appeared that he voluntarily paid her a certain sum per week during a portion of the period of alleged desertion. He gave no explanation of why he made this payment. *Held,* that the evidence was insufficient to sustain a decree of divorce.

Argued Oct. 21, 1904. Appeal, No. 162, Oct. T., 1904, by plaintiff, from decree of C. P. No. 3, Phila. Co., Dec. T., 1903, No. 28, refusing divorce in case of Peter Olson v. Mary A. Olson. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Libel for divorce.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree refusing the divorce.

*Edward A. Anderson,* for appellant.—It is the well-defined duty of the court of original jurisdiction, as well as of the appellate courts, to make a careful examination of the evidence in order to ascertain whether it does in very truth establish the statutory grounds for a divorce : Middleton v. Middleton, 187 Pa. 612 ; Shoemaker v. Shoemaker, 25 Pa. Superior Ct. 183.

The mere fact that leading questions were asked is no reason why this divorce should not be granted. In the first place there was no dispute as to the facts, that this respondent did deliberately desert the libellant, taking away the furniture, and if the questions were leading they grew out of that fact. If any objections were to be made they should have been made at

the time of taking the testimony; it is too late afterwards: Sheeler v. Speer, 3 Binney, 130 ; Corkery v. O'Neill, 9 Pa. Superior Ct. 335; Kemmerer v. Edelman, 23 Pa. 143 ; McKim v. Somers, 1 P. & W. 297 ; Gantt v. Cox & Son Co., 199 Pa. 208.

This case is ruled by Shoemaker v. Shoemaker, 25 Pa. Superior Ct. 183.

No appearance or paper-book for appellee.

OPINION BY RICE, P. J., January 17, 1905:

The libellant testified that when he returned from work at noon on December 17, 1901, he found that most of the furniture of his house had been taken away ; that he had seen his wife but twice since that time; that she gave no reason for leaving him, and that he knew of none.  This is the substance of his testimony upon a subject concerning which it is reasonable to suppose he was better informed than any living person except the libellee.  He says nothing as to whether they had had previous disagreements or difficulties of any sort, and so far as his testimony shows, he made no effort to find out why she had left him in this sudden and unexplained manner.

The first witness called by the libellant testified that he boarded with the libellant and libellee ; that the night before she left she told him, the witness, that she was going to move, and that when he returned to the house the next evening everything was gone.  The other witness testified that she and her husband moved into the house in January, 1902, and the libellant boarded with them for a time ; that the libellee, with whom the witness had not been previously acquainted, came to the house on three occasions afterwards ; that she requested the witness not to speak to the libellant about her being there ; and that (quoting her language in answer to a leading question)  " She told me she had deserted him."

The very meagerness of the libellant's testimony relative to the separation in December, 1901, and what preceded it, gives ground for surmise at least that all the facts that would throw light upon it have not been disclosed.  But his apparent indifference to her separation from him is not the only significant circumstance bearing upon the good faith of the application.  It

appears that he not only never sought to find out why she had left his house or requested her to come back, but that from November 1, 1902, until recently, he gave her, through his attorney, $4.00 a week for her support. He says, "I gave this in lieu of alimony." But the petition for divorce was not filed until December, 1903, so that it could not have been paid as alimony; and I can find no testimony that it was paid by an arrangement between their attorneys or by compulsion. In short he, voluntarily so far as the testimony shows, supported her, or contributed to her support, apart from his habitation, for a considerable portion of the time during which, according to the averment of his petition, she was wilfully and maliciously absenting herself from it, and this too, without ever intimating to her that his house was open to her if she chose to return, or inquiring why she had left it. We do not assert that such conduct is, per se, a conclusive bar to a divorce. Cases might arise in which it would be susceptible of explanation in a way that would repel any inference of consent on the libellant's part to the continuation of the separation. But in the absence of explanation it is a circumstance which, though not conclusive, has an important bearing on that question. Separation is not desertion. Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert wilfully, and maliciously persisted in without cause for two years. What may have been desertion in its inception, but has become a separation with mutual consent within two years, is not ground for divorce. Vanleer v. Vanleer, 13 Pa. 211, furnishes an illustration of the application of this undoubted principle. "If a desertion has commenced, then articles are entered into, it is thereby terminated in the separation by mutual consent:" 1 Bishop's Marriage, Divorce and Separation, sec. 1767. The mutual consent that will prevent a divorce upon the ground of desertion may be inferred from the conduct of the parties, and need not be put in the form of a solemn written agreement. Uncontradicted testimony may not be rejected capriciously in a divorce case, any more than in other cases : Shoemaker v. Shoemaker, 25 Pa. Superior Ct. 183. But courts are not bound to accept as absolute verity the testimony of a libellant that the libellee willfully and maliciously deserted him, such testimony being given in answer to leading questions

and without being subjected to the test of cross-examination, where, in addition to its inherent weakness or improbability, a natural inference may be drawn from his conduct that is wholly inconsistent with it. Even though collusion be not positively shown, still if the case discloses what may create suspicion of it, vigilance will be specially aroused to discover it, and to avert imposition and to detect weaknesses in the proof. "What is termed the vigilance of the court will be aroused by slight circumstances quite inadequate to prove collusion, yet demanding special scrutiny of every part of the evidence: " 2 Bishop's Marriage, Divorce and Separation, sec. 260; English v. English, 19 Pa. Superior Ct. 586, 598.

The circumstances of this case, as disclosed by the libellant's testimony, were such as not only to justify but require the most rigid scrutiny. "Courts ought never to sever the marriage contract, but where the application is made in sincerity and truth for the causes set forth and no other and fully sustained by the testimony: " Angier v. Angier, 63 Pa. 450. The marriage relation "should never be dissolved without clear proof of imperious reasons: " Richards v. Richards, 37 Pa. 225. "Divorce ought never to be decreed without clear and satisfactory evidence of the wrong which the law treats as justifying cause for divorce. And this is especially true where the witnesses called to prove the wrong are likely to be biased by relationship or by affection for the party seeking the divorce, and where they have not been subjected to cross-examination: " Edmonds' Appeal, 57 Pa. 232. Still more is this true where the witness is the libellant. These and other cases, in which the same doctrine as to the kind of proof required is declared, are cited with approval in Middleton v. Middleton, 187 Pa. 612.

Viewing the testimony as a whole in the light of the well-settled principles above alluded to, we are unable to concur in convicting the common pleas of error in concluding that the evidence was not sufficient, by which we understand the court to mean that it was not so clear, satisfactory and convincing as to justify a finding of those facts which are essential to a lawful dissolution of the marriage relation.

Decree affirmed.