AMELIA M. CARROLL, appellant,

*v.*

DE ALTON W. CARROLL, respondent.

[Submitted March 17th, 1905.    Decided June 19th, 1905.]

Open and notorious support of and cohabitation with another woman, while absent from the wife, without her knowledge of the cause of the continued absence, or of the place where her husband is residing, or of the business in which he is engaged, or of his ability or lack of ability to support her, when persisted in for the period required by the statute, is evidence from which a finding may be made of willful, continued and obstinate desertion on the part of the husband.

On appeal from a decree in chancery.

*Ex parte.*

*Messrs. Riker & Riker,* for the appellant.

The opinion of the court was delivered by

FORT, J.

In this case there is no question of jurisdiction. The defendant resides at Elizabeth, in this state, and has, undoubtedly, for upwards of three years, and probably for five years.

The petitioner has resided in Newark, in this state, since June, 1902. Her petition was filed in May, 1903. *P. L. 1902 p. 503 § 4 ¶ 2.*

The bill is filed for a divorce on the ground of desertion.

The parties were married February 4th, 1879, at Meadville, Pennsylvania. They resided for short periods at other places until, in the year 1888, when they went to Buffalo to live. The defendant was there employed by the Wells-Fargo Company.

The issue of their marriage has been two children.

In the year 1893 the defendant left his home in Buffalo, without stating that he intended to do so, and his wife subsequently learned that he was short in his accounts with the company. He was absent for about a year, during which time he corresponded with his wife, and kept her advised of his whereabouts. In May or June, 1894, he was ill and returned to Buffalo to the home of his wife, she having moved, in the meantime, from the house which they occupied when he left, to another place. He remained at the home of his wife, upon this occasion, for about two months, and left in July, 1894, stating to his wife that the detectives were hunting for him. During those two months he was supported by his wife in her home.

When he left the second time he went to several places, among them Rochester, New York; Pittsburg, Pennsylvania, and Cleveland, Ohio, and, finally, Williamsport, Pennsylvania. At each of these places he corresponded with his wife. He wrote his last letter from Williamsport, which letter his wife answered, but her letter was returned, and since that time she has not received any communication from him of any character. Nor has she received anything by way of contribution, in money or otherwise, toward her support, or the support of her children. It is about ten years since she heard from the defendant at Williamsport. During all that time she has supported herself and her children by dressmaking.

The proofs show that about five years before the filing of the petition the defendant was living in Elizabeth, in this state, and running a restaurant there. The fact that he was at Elizabeth was discovered accidentally by his daughter, after the mother and son and daughter removed to Newark. The daughter discovered the name of her father in examining a telephone book, and thereupon went to Elizabeth to ascertain if it was her father. At first he pretended not to recognize her, but subsequently he admitted his identity, and after this sent for the son and employed him for a time in the Elizabeth restaurant. While thus employed the son discovered that the father was holding out that he was married, and was maintaining a house and living with another woman in Elizabeth. After learning of

these conditions the son, in a short time, refused to remain with the father if they were continued.

The petitioner, of course, soon learned the true situation.

The defendant, after being advised of the place of residence of the petitioner and her children, failed to make any provision for their support, or to come to visit them, or to request them to come to live at Elizabeth.

In January, 1903, the husband began a suit for divorce against the petitioner in this state, on the ground of desertion. He was notified that the suit would be contested, and discontinued the suit.

Then, upon the advice of counsel, the petitioner began this suit.

The petitioner testifies that her husband has never communicated with her, either by letter or messenger, or in any other way, since the letter which she received from him from Williamsport, Pennsylvania. The testimony of the petitioner in this respect is corroborated by George W. Carroll, the son, and Vern B. Carroll, the daughter, one, at the time of giving his testimony, being of full age, and the other nineteen years of age. They both say that the defendant has not in any way contributed toward their support or visited the mother during all this period.

Frank B. Hetzmann, a witness produced on the part of the petitioner, testifies that he has known the defendant for more than three years prior to January, 1904, and that during all that time he has been in business in Elizabeth, conducting a restaurant. He also says that the defendant has lived in Union street, corner of West Grand street, in that city, all the time that he has known him.

The son, George W. Carroll, testifies to the residence of his father at the same place, and that he lived there with a woman known as Mrs. Carroll, and that the father requested the son, when he came to work in his restaurant, to work there under an assumed name, so that this woman would not know that he was his son. He says he did this for two weeks under the name of George Mason, and then refused to continue it, and thereupon he was introduced to the woman as the defendant's son,

and that he left because the relations between him and the defendant became strained on account of the woman. He testifies that his father told him that he had been living with this woman in Elizabeth for about five years, and that he was married to her five years ago. Afterwards the father told him that he was not married to her, and that the woman had no claim upon him. The son also testifies that he asked the defendant why he left his mother, the petitioner, and whether it was for anything that she had done, and the defendant said "No."

The court of chancery, upon this evidence, refused to grant the divorce, on the ground that the desertion was not established. It intimated that if the petition had been filed for adultery the divorce might have been granted.

We think that this refusal was error.

It is not necessary to begin a desertion that the deserter intend to desert at the time he leaves his home. If the proof establishes that he at any time while absent from his home determined that from thenceforth he would desert his wife, and that determination is persisted in willfully, continuously and obstinately for the statutory period, that will constitute desertion within the statute.

When the petitioner in this case discovered the relations existing between the defendant and the woman at Elizabeth, and that he was maintaining her in a house which he provided for her, she was under no obligation to seek his return, and she would have been justified in refusing to permit him to return to her.

In the case of *Lister* v. *Lister,* 65 *N. J. Eq.* (*20 Dick.*) 109, Vice-Chancellor Emery said, in a case where the husband had offered to return: "If at the time of offering to return to live with his wife the husband was in fact living in adultery, the offer to return cannot be considered as one made in good faith or to be an offer which the wife was bound to accept for the purpose of terminating the desertion."

This case was affirmed in the court of errors and appeals, in 66 *N. J. Eq.* (*21 Dick.*) 434, for the reasons given by the vice-chancellor.

We think that open and notorious support of and cohabitation with another woman, while absent from the wife, without her knowledge of the cause of the continued absence, or of the place where her husband is residing, or of the business in which he is engaged, or of his ability or lack of ability to support her, when persisted in for the period required by the statute to constitute the offence, is evidence from which a finding may be made of willful, continued and obstinate desertion on the part of the husband.

The proof in this case is uncontroverted, and upon it we think the decree of the court of chancery should be reversed and the record remitted to the court of chancery with the direction to that court to enter a decree granting the divorce as prayed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.