# Lodge's Estate.

*Executors and administrators—Decedents' estates—Husband and wife—Separation or desertion by wife—Forfeiture of right to administer—Presumption of intent to desert—Evidence to overcome —Adultery—Act of June 7, 1917, P. L. 429.*

1. Under the Act of June 7, 1917, P. L. 429, which provides that desertion by a wife, continued for a year prior to her husband's

death, forfeits all right in his estate, the desertion must be an actual abandonment of matrimonial cohabitation with intent to desert, wilful and persisted in without cause for a year; mere separation is not desertion within the meaning of the act.

2. Intent to desert is presumed when the wife withdraws from the residence of her husband without cause or consent.

3. The mere fact of living apart does not of itself give rise to the presumption of desertion, there must be some act to mark the intent to permanently desert.

4. The intent may be presumed where the separation was without legal cause, but no presumption of fact can prevail against facts found to exist.

5. A separation without the elements of wilful and malicious desertion present, may be turned into such by some positive and unequivocal act indicating an intention to desert.

6. Although a wife may not have wilfully and maliciously deserted her husband at the time of a separation, within the meaning of the Act of 1917, yet, if after the separation, she establishes an adulterous relation with another man, and continues it for a full year prior to her husband's death, such relationship is evidence of desertion from the time it arose, and will deprive her of all interest in her husband's estate.

7. If there is some act, such as adultery by one of the parties, that would excuse the injured party from taking back the other, that would show, despite the amicable or reasonable character of the separation, that the adulterer intended to renounce the marriage relation; the separation would become a malicious desertion by him or her from the day of the act, within the meaning of the Act of 1917.

Argued May 10, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 163, Jan. T., 1926, by Cecelia Lodge, from decree of O. C. Northumberland Co., Sept. T., 1924, No. 57, dismissing petition for letters of administration. Affirmed.

Petition to compel issuance of letters of administration. Before STROUSS, P. J.

The opinion of the Supreme Court states the facts.

Petition dismissed. Petitioner appealed.

*Error assigned* was, inter alia, decree, quoting record.

*C. K. Morganroth,* with him *J. A. Welsh,* for appellant.—Mere separation does not constitute wilful and malicious desertion: Outland v. Outland, 27 Pa. Dist. R. 1; Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241; Ingersoll v. Ingersoll, 49 Pa. 249.

There is no evidence of improper conduct between petitioner and her alleged paramour: Arnout's Est., 283 Pa. 49.

The basing of a presumption upon a presumption is not permitted: Douglass v. Mitchell, 35 Pa. 440; Hall v. R. R., 60 Pa. Superior Ct. 235.

*Fred B. Moser,* for appellee.—Except there be fraud, clear mistake or manifest lack of consideration, findings of facts by an auditor or auditing judge will not be disturbed by an appellate court: 2 Vale's Digest, col. 4905 and cases cited.

OPINION BY MR. JUSTICE KEPHART, June 26, 1926:

Cecelia, widow of Charles C. Lodge, brought a proceeding to compel the issuance of letters of administration in her husband's estate. The answer set up her wilful and malicious desertion for a period of one year prior to his death, by which act she forfeited any right to administer the estate or to participate in its distribution. The court below dismissed the petition.

Section 6 of the Act of June 7, 1917, P. L. 429, provides, "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband, shall have the right to claim any title or interest in his real or personal estate after his decease under the provisions of this act." The act requires the desertion to be wilful and malicious. Mere separation is not desertion, there must be an actual abandonment of matrimonial cohabitation with intent to desert, wilful and persisted in without cause for a

year.  Intent is presumed when either party withdraws
from the residence of the other without cause or con-
sent: Ingersoll v. Ingersoll, 49 Pa. 249, 251; Middleton
v. Middleton, 187 Pa. 612.  The mere fact of living apart
from the husband does not of itself give rise to the pre-
sumption of desertion.  There must be some act to mark
the intent to permanently desert: Hedderson v. Hedder-
son, 35 Pa. Superior Ct. 629.  "Maliciously" has ref-
erence to legal malice (McClurg's App., 66 Pa. 366);
the original desertion must be wilfully and maliciously
persisted in for the period required by the statute:
Arnout's Est., 283 Pa. 49, 52.  The intent may be pre-
sumed where the separation was without legal cause,
but no presumption of fact can prevail against facts
found to exist: Chalfant v. Edwards, 173 Pa. 246.  Pre-
sumption has no place where the proof negatives either
wilfulness or maliciousness.  One of the married couple
may withdraw from the residence of the other for rea-
sonable cause, such as the husband's bad conduct
(Golden v. Golden, 36 Pa. Superior Ct. 648), or the
parties may by agreement consent to separation.  The
latter will not sustain the charge of desertion either
under this or the divorce act.

Under the facts of the present case, as we read the
record, we have a claim made by one who has absented
herself from her husband's domicile for a number of
years, during which time she has committed adultery,
and after her husband's death claims his estate.  It has
been held in this State that a separation having all the
elements of wilful and malicious desertion, under our
divorce laws, may be deprived of its efficacy as such by
some acts indicating an assent or agreement of the
wronged party to its continuance (Olson v. Olson, 27
Pa. Superior Ct. 128; King v. King, 36 Pa. Superior Ct.
33), the statutory desertion not then having been per-
sisted in.  The converse of this principle is true, that
a separation without the elements of wilful and ma-
licious desertion present, may be turned into such by

some positive and unequivocal act indicating an intention to desert. If there is some act, such as adultery by one of the parties, that would excuse the injured party from taking back the other, that would show, despite the amicable or reasonable character of the separation, that the adulterer intended to renounce the marriage relation; the separation would become a malicious desertion by him or her from the day of the act, within the meaning of the Act of 1917. As to a separation on reasonable cause becoming a wilful and malicious desertion on the expiration of the cause, see Zeiler v. Zeiler, 58 Pa. Superior Ct. 220, 222; Howe v. Howe, 16 Pa. Superior Ct. 193, 194. "Desertion begins with the intent to desert and to make such desertion permanent": Hedderson v. Hedderson, supra. The foregoing quotation was taken by the court from Browne on Divorce, p. 144. In accord with this view see also 19 C. J. 63, and Keezer on Marriage and Divorce, 2d edition, section 327. "The intention to abandon need not begin at the time of the separation. Even if at the time of separation there was no intention to abandon the spouse, but later such intention arises, legal abandonment occurs and the statutory time begins to run." For an illustration of the application of this principle see Carroll v. Carroll, 68 N. J. Eq. 724, 61 Atl. 383; Foote v. Foote, 71 N. J. Eq. 273, 65 Atl. 205. The English law, in accord, is well settled,— "though the separation be no desertion in its inception, it may become such afterwards: as where a husband leaves his wife in the first instance for some good purpose, with her consent, and afterwards breaks off all connection with her and lives in adultery": Browne & Watts on Divorce, 1921 edition, page 70. See also the able opinion of Judge ENDLICH in Bechtel v. Bechtel, 18 Pa. Dist. R. 1076, stating, "the doctrine therefore has nothing to do with the question whether a separation, not in its inception a wilful and malicious desertion, can by subsequent events be converted into such ab initio. That question seems to be disposed of by the prin-

ciple 'desertion begins with the intent to desert and to make such desertion permanent,'......but if a separation which does not so begin can become a desertion by an after-developed purpose, clearly the instant when it becomes a desertion must be marked by something tangible indicative of supervening intention not originally entertained, and the necessary period of desertion can begin to run only from that time. Where no change of circumstances, nor announcement, expressed or implied, of the new purpose has occurred, there can, in the nature of things, be no proof of it or of the time of its birth."

What more tangible act indicative of an intent to renounce the marriage relation could there be than the fact of adultery coupled with the actual physical separation persisted in for more than a year under the Act of 1917. Two married people for various reasons agree to live separate and apart from each other. They have no relations in common. One of them commits an act or acts of adultery in total disregard of the marriage vows with a reckless disregard of social as well as legal duty, evidencing every intent not to regard it either as being in existence or as having any force. Can it be doubted that such act, coupled with absence and separation, is equivalent to an open expression of an intent to wilfully and maliciously maintain that separation? To permit the injuring person, on the injured person's death, to claim an interest in the disposition of the latter's property would be to the manifest prejudice of the children, if any, whom she has forsaken, as well as other heirs she has disgraced, and against a sound public policy. The question seems to answer itself. The misconduct must be such as would be sufficient to procure a divorce in itself, as the facts here show.

Notwithstanding this, however, if the injured party condones the offense or forgives the desertion, or, as stated by the Act of March 13, 1815, P. L. 152, "admits the injured party into connubial society after he or she knew of the criminal act," such conduct will preclude

the party from claiming the benefit of the wrongful acts. There is no evidence of condonation in this record.

In the present case the parties were married in 1919 and lived together until 1922. A short time before that the widow became infatuated with Frank Bower, locomotive fireman on the Reading Railroad. She left on the 9th of July, 1922. The act of wilful and malicious desertion does not appear and the separation under the law would be by consent or by mutual agreement. The widow met Bower on the train to Atlantic City, at which last-named place she remained for a month, and then came back to Shamokin, accompanied by Bower; after about a week she and the fireman went to Detroit, Michigan, where they remained the greater part of the time until after the husband's death. She returned with Bower to claim an interest in her husband's estate.

There is no doubt, as we read this record, they lived in adulterous relation. The husband died April 4, 1924, when the widow returned to claim part of his estate. This adulterous relationship having its inception in 1922, must be considered from that time as evidencing a wilful and malicious desertion, which continued for a period of time longer than the statute required.

The decree of the court below is affirmed.