## Rock v. Rock

*Cornelius C. O'Brien*, for libellant.
*Joseph M. Smith*, for respondent.

KUN, J., October 27, 1944.—A libel in divorce charging wilful and malicious desertion on the part of the husband was filed in this case, which was in due course referred to a master. After a number of hearings were held by the master, taking testimony directed to the charge of desertion alleged in the libel, it must have

appeared very doubtful to counsel for libellant that a case had been made out because he then obtained leave of the court to amend the libel to add the charges of cruelty and indignities to the person. The master filed a report recommending a dismissal of the libel as to all the grounds alleged. At the argument on the exceptions filed to the master's report, those relating to cruel and barbarous treatment and indignities to the person were abandoned and the argument was directed solely to the exceptions to the master's report recommending a dismissal of the libel as to the charge of desertion.

There is no substantial dispute about the facts in this case. Respondent, a real estate broker and builder, used money belonging to clients and became insolvent. A warrant for his arrest was issued and he was ordered to appear before a magistrate. He told libellant, his wife, of his impending arrest. She testified that her husband came into the house quite agitated saying, "I have to get out of here. They are after me, the detectives". She also testified, "He said 'I have to leave', and said he would meet me later so he went out that afternoon". Respondent kept in touch with his family by telephoning to his children and to his wife. Asked what was said by him in his conversation with her, libellant testified: "His subject was that the detectives were still pursuing him and he was evading them". Detectives came to the home in search of respondent. Respondent kept in touch intermittently with his wife and children, returning to the city after a lapse of two years when he was advised that, having been out of the Commonwealth, the statute of limitations affecting the charges against him had not run, following which he remained in the city for two more years, at the expiration of which, believing he was safe from prosecution, he returned to his home but his wife refused to admit him. The question is whether respondent's leaving his matrimonial domicile under the circumstances set forth amounted to legal desertion as a sufficient cause for di-

vorce in this State. The precise question has not been passed on by any of our appellate courts.

Mere separation is not legal desertion in this State, whatever the inducing cause of the separation may have been. The desertion which is the ground for divorce must be wilful and malicious, that is to say, wilful in the sense that it is voluntary, and malicious in the sense that the malice is directed to the other spouse, the intent and purpose of the separation being to dissolve the marital relationship, which resolve must be persisted in for the statutory period of two years before the desertion may be made the effective basis of a divorce. It is apparent from the short recital of the facts in the case (to be found in greater detail in the record) that the separation by respondent from his home was not due in any sense whatever to any intent wilfully and maliciously to desert his wife and end their matrimonial relationship permanently, but was a device used by him to avoid arrest on charges entirely unrelated to his marriage, and as soon as he felt himself free of the threat of prosecution he returned to his home and endeavored to resume his marital duties. It is clear that the intent of respondent here was to escape prosecution and possible sentence to jail and not to wilfully and maliciously desert his wife and family with whom, as indicated, he kept contact in many ways until the danger to him had passed, when he attempted to return to them.

Much stress is laid by libellant's counsel on a note sent by respondent after his departure from the house to one of his children in which, asking to give the bearer of the note some personal effects, he stated, "I don't expect to see you again so I will say good-bye to yourself, Joseph, Miriam, Paul and Bill and God bless each of you". It must be borne in mind that the man was evading arrest and the thought expressed at the time is easily attributable to the fear that he may have had that he might be detected and arrested should he arrange to see any of his children. Yet even this fear was

not strong enough to overcome his great desire to see his children, because in a subsequent note written to the same child he wrote, "I wish you would meet me this morning at . . ." Then in his final telephone call to his wife, according to her own version of it, there is revealed the utter absence of the elements necessary to constitute a legal desertion. She testified:

"He said he was leaving, he always wanted to take a trip across the ocean, now he would take it. He said he was leaving the next morning for a long distance trip by boat, and he just simply called up to say goodbye, that he had been surrounded by three detectives, two men and a woman, and he was going away entirely. The next morning at 5:30 o'clock the telephone bell rang, and Mr. Rock again wished to speak to Michael, and he told him the same that he was going off. I answered first, and then I called Michael to the telephone."

After the danger of his arrest had passed, respondent attempted to return to his home, a purpose on his part indicated and implicit in all the circumstances of his leaving and subsequent communications with his wife and family.

Legal desertion as a cause for divorce is not to be treated lightly. No case is more helpful to a proper understanding of this cause for divorce than Ingersoll v. Ingersoll, 49 Pa. 249, which epitomizes the subject in a comparatively short per curiam opinion. There the husband neglected to provide for his wife, in consequence of which she went to live with her people. Her husband thereafter ceased writing to her. After a lapse of more than two years the wife sued for divorce, charging her husband with desertion. The court held that the proofs did not present a case of wilful and malicious desertion. The court said (p. 251):

"Separation is not desertion. Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is

manifested when, without cause or consent, either party withdraws from the residence of the other."

However, just as in that case the cause of the separation was neglect to support, so in the case before us the cause of the separation was the purpose on the part of the husband, respondent, to avoid arrest. The wilfulness and maliciousness to abandon matrimonial cohabitation is absent in both cases and hence there is no legal desertion. The court also said (p. 251) :

"He ceased to write her letters, but neglect to answer letters is not desertion. Poverty, idleness, unthriftiness, are great evils when they drive a wife into separation from her husband, but they must not be mistaken for the high crime of malicious desertion."

Reference is made to the last quotation because in the case before us respondent leans heavily on a dictum by the very learned Endlich, P. J., in Bechtel v. Bechtel, 18 Dist. R. 1076, although the decision in that case was that the husband, having been ordered out of the house by the wife's father charging him with infidelity, could not either on that basis or because of his subsequent flight to avoid arrest be charged with legal desertion. The dictum referred to is (p. 1078) :

"But it may not unreasonably be considered that one who has committed a crime and by flight evades the process of law issued against him is to be looked upon as, in so doing, regardless of his social duty, reckless of consequences to his wife and family, and undoubtedly a free agent; i. e., that his act may be both wilful and malicious."

Counsel then points to Lodge's Estate, 287 Pa. 184, in which the opinion of Judge Endlich in the Bechtel case is referred to as an "able" one, as much as to say that the Supreme Court approved the dictum quoted. There is in our opinion no relation whatever between one's leaving home to avoid arrest and the wilfulness and maliciousness required to constitute a legal desertion under the divorce laws. A study of the opinion in Lodge's Estate shows that the opinion in the Bechtel

case was referred to for an entirely different purpose, namely, to point out the principle that a separation not in its inception a wilful and malicious desertion cannot by any subsequent events be converted into such ab initio but may become a desertion later "by something tangible indicative of supervening intention not originally entertained" in which event "the necessary period of desertion can begin to run only from that time", the court holding that there can be nothing more tangible indicative of an intent to renounce a marriage relation than an act of adultery on the part of the separated spouse. Why? Obviously because such an act is directed against the very essence of the marital relation itself. It would not be the same if he just stole a pair of shoes or, as in the case before us, stole some clients' money; that is to say, such acts, wilful and malicious as they might be qua those crimes, would not supply the wilfulness and maliciousness necessary to constitute a legal desertion. Of course subsequent conviction and sentence for such crimes might furnish a different kind of a basis for divorce, but it would not be wilful and malicious desertion.

The last quotation from the opinion of the Ingersoll case was given, however, to emphasize that divorce in this State may not be obtained on the loose or broad ground of what may be termed violation of "social duty", but only on proof of some statutory authorization therefor. As well put by the Supreme Court in the Ingersoll case, such things as the cessation of correspondence, while in a sense social neglect, and such other things as poverty, idleness and unthriftiness are great evils, which we may properly characterize as violation of social duty, "must not be mistaken for the high crime of malicious desertion".

Finally, as pointed out in Lodge's Estate (p. 187) :

"The intent [to legally desert] may be presumed where the separation was without legal cause . . . no presumption of fact can prevail against facts found to exist [citing Chalfant v. Edwards, 173 Pa. 246].

Presumption has no place where the proof negatives either wilfulness or maliciousness."

Libellant's own testimony in the case before us completely negatives any wilfulness or maliciousness on the part of her husband to desert her in the legal sense of the term when, as she testified, he left the home to avoid arrest. He did nothing thereafter to indicate an intent to wilfully and maliciously desert her. Quite to the contrary, he attempted to return to his home.

The exceptions to the report and the recommendation are dismissed and the libel is dismissed.