## Archer Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Samuel Gordon,* for exceptants.

*John P. Byrne, Jr.,* contra.

LADNER, J., May 13, 1949.—At the audit of the Estate of Alexander T. Archer (who died intestate July 21, 1945), Winifred J. Walsh Archer claimed a widow's right to share in the estate. The auditing judge found that although decedent and Winifred were married March 1, 1920, in Akron, Ohio, where they lived together for six months, they separated by mutual consent. Winifred returned to her parents' home in Buffalo and after about nine years (the date, says the adjudication, is not made clear by the testimony) took up an unlawful relationship with one Frank C. Fina, with whom she continued to cohabit

until decedent's death. She was known by the name of Winifred Fina, as appears from the personal registration record of voters in the ninth election district of Buffalo, N. Y., and had a child by Frank C. Fina, born July 29, 1930.

The auditing judge found that the separation of decedent and claimant in September 1920 was not then a wilful and malicious desertion by decedent but a separation by consent. That further, under the doctrine of Lodge's Estate, 287 Pa. 184; Bowman's Estate, 301 Pa. 337; Fenyo's Estate, 105 Pa. Superior Ct. 560, and McMullin's Estate, 18 D. & C. 397, the consensual separation became wilful and malicious desertion by reason of the subsequent adultery of Winifred which persisted more than a year previous to his death. Thereby she forfeited her intestate share in decedent's estate.

Counsel for claimant challenges the dismissal of her claim by 14 exceptions which are now before us for disposition. The first 10 exceptions raise the single question whether the learned auditing judge erred in not finding as a fact that claimant's leaving the common domicile was justified by the circumstances testified to so as to establish constructive wilful and malicious desertion on the part of decedent. In brief, these circumstances were that decedent a month after marriage proposed to his bride that they move to Detroit and there he would bring to her men for immoral purposes; that she rejected this proposition, but he at intervals sought her consent and finally in September, six months after her marriage, when she once more rejected his proposition, gave her $65 and ordered her out of the house. Whereupon she left and returned to her parents' home in Buffalo.

The auditing judge discredited her testimony and specifically found it unworthy of belief. As recently as Jones' Estate, 58 D. & C. 595, 1947, at page 600,

we said that in cases of this kind, "a surviving spouse's testimony ought to be closely scrutinized, carefully weighed, and even if called 'as for cross-examination' rejected where self-interest, improbability and lack of candor raise doubt of his credibility in an auditing judge's mind. Cf. Stewart's Estate, 54 D. & C. 607, at page 617. Moreover, this kind of case is peculiarly one for the application of the principle that we will not set aside an auditing judge's findings of fact unless clear error is shown and it appears that the facts found were without sufficient evidence to sustain them, because he hears and sees the witnesses who testify and is therefore best able to judge of their credibility; Kvist's Estate, 256 Pa. 30, at page 35; Hollins' Estate, 29 D. & C. 307; Kimmey's Estate, 27 D. & C. 608."

To the cases there cited we add Roberts' Estate, 350 Pa. 467, 471, which accords to the fact-findings of an auditing judge the weight of a verdict by a jury, and holds they are not to be disturbed except for clear error. We have carefully read the testimony in the light of these principles and all agree no such clear error has here been shown. The first 10 exceptions are therefore dismissed.

Under the remaining exceptions, counsel for claimant argues that assuming there was a consensual separation, the record conclusively establishes that the husband *first* lived in adultery with a paramour in 1925, and as claimant did not start living with Fina until 1929, under the doctrine of Lodge's Estate, 287 Pa. 184, the husband's adulterous conduct having first occurred, turned the consensual separation into wilful and malicious desertion on his part, so that what claimant did thereafter was immaterial, citing Jac's Estate, 355 Pa. 137; Reel v. Elder, 62 Pa. 308, etc.

There are two answers to this argument. In the first place the auditing judge found as a fact, upon adequate testimony, that decedent entered into a "common-law

marriage" with Helen O'Brien in September 1928, not 1925. He made no fact-finding and could make none fixing the date when claimant entered into her illicit relationship with Fina, because, as he well said, the testimony on this subject was not clear. It does appear in the record, however, that claimant had a child by Fina which, according to birth certificate, was born July 29, 1930. This indicated the child was conceived approximately in October 1929, or perhaps earlier, but does not establish that the illicit relationship of claimant and her paramour *began* at that date. It is not unlikely that it began an appreciable time, perhaps even more than a year before, which would have made the first transgression hers. In any event, if claimant's counsel had intended to rely on the principles now urged, viz., that the party who first transgressed excused the other's subsequent misconduct, it was his duty to have established the important date with sufficient clarity to have enabled the auditing judge to make a finding. Not having done so, we must take the record as we find it. Without the date of commencement of claimant's misconduct established, the base on which exceptant's entire argument must rest, is lacking.

As a second answer to counsel's contention, we say even if that date had been established, we are not prepared to admit the soundness of the argument advanced. While it is true that the cases cited by him establish the principle that where a spouse wilfully and maliciously deserts the other, the subsequent misconduct of the deserted spouse does not forfeit her right to the other's estate, yet those cases were all cases in which a wilful and malicious desertion occurred at the time of separation and not cases where the original separation was by mutual consent.

We think it more in keeping with a sound public policy to rule as did the auditing judge, that where

there had been a separation by mutual consent and thereafter both spouses enter into adulterous relationships with paramours, neither spouse may share in the other's estate, irrespective of who was the first to transgress. The basic principles of equity as well as consideration for public morals and common decency permit no other rule.

All exceptions are dismissed and the adjudication is now confirmed absolutely.