In the Matter of the Estate of John R. Green, Deceased.

Surrogate's Court, New York County, May 23, 1935.

*Russell H. Robbins,* for Ellen P. Green, widow.

*White & Case,* for the executors.

*Hayes, Nottingham & Combs,* for the legatees.

DELEHANTY, S. The widow of deceased makes application for determination now of the validity and effect of an election heretofore filed by her to take an intestate share in the property of deceased against the provisions of his will. The executors and the residuary legatees of deceased oppose her application and assert that she has no right of election because of the provisions of subdivision 5 of section 18 of the Decedent Estate Law which says: " No wife who has abandoned her husband shall have the right of such an election."

There is some conflict of fact in the record. In so far as that conflict relates to the conduct of deceased in Europe and his abandonment there of his wife, the court finds in her favor and holds that his abandonment of her is amply established. There is controversy upon one other matter respecting which the court

finds against petitioner. As a result there is present here a question of law which apparently has not been passed on heretofore in the precise form here presented. That question requires consideration of the history of section 18 of the Decedent Estate Law. It requires consideration also of the precise meaning to be given to the word " abandoned " as it is used in subdivision 5 of that section.

Determination of the question can proceed unembarrassed by any sentiments of sympathy for either of the parties involved. Deceased willfully abandoned his wife for a mistress. He left her wholly without resources in a foreign country. He locked his residence against her and left her to her own devices to sustain life and to finance her own return to this country. He concealed his whereabouts from her. He instructed his banking agency not to give her information. He supplied neither home nor support for her from 1925 to his death in 1933. He answered none of her letters. Meantime he was living abroad with a mistress.

The first husband of petitioner divorced her in this State on statutory grounds. She married deceased in Paris in May, 1924, and lived with him in France until June, 1925, when, in her temporary absence from their common home in Nice, deceased left with his nurse whom he had made his mistress. In some fashion not stated petitioner came back to this country. Beginning some two years after her husband abandoned her she lived in Pittsburg in adulterous relations with another man. This was secret from her husband. He was not outraged or embarrassed by it since during this same period he was supporting one or more mistresses abroad. Proof of this adultery of petitioner was objected to on the score that it is irrelevant to the inquiry here. The proof was taken subject to a motion to strike it from the record. Determination of that motion will follow the decision of the law question which is involved here.

Long before deceased's death petitioner ceased her efforts to find him and to obtain support from him. Apparently content with his successful avoidance of his obligations to her, he instituted no proceeding against her either for divorce or separation. She instituted none against him. At the time of his death they were husband and wife. The question is whether on the facts here that established relationship entitles her to a share in his estate.

One minor question requires consideration. The decree of divorce rendered in this State against petitioner contained the usual prohibition against her remarriage. Her status as widow of deceased was definitely accepted in earlier proceedings in this court by all the other parties to this proceeding and they probably are not free to deny her status as widow. It is perhaps desirable,

however, to restate the accepted law that the prohibition so written into the decree of divorce in this State has no extraterritorial effect and that the marriage of a spouse violating the prohibition, if performed in a State where such remarriage is valid, will be recognized in this State. A properly validated certificate of the marriage of petitioner and deceased in the Republic of France is in evidence here. It will be presumed in such circumstances that the marriage so performed was authorized under French law. (*Fisher* v. *Fisher*, 250 N. Y. 313, 317.) No proof to the contrary is suggested. All the parties here assumed the validity of the French marriage in the earlier proceedings in this court. Being valid under French law the marriage there performed is valid here despite its violation of the prohibition in the decree of divorce. (*Fisher* v. *Fisher*, *supra*; *Cunningham* v. *Cunningham*, 206 N. Y. 341; *Moore* v. *Hegeman*, 92 id. 521; *Thorp* v. *Thorp*, 90 id. 602; *Van Voorhis* v. *Brintnall*, 86 id. 18.)

. Starting then with the established fact that petitioner is the widow of deceased and adding to this the fact found by the court that deceased without cause abandoned her and continued his abandonment until he died, does the proof of adultery by the so abandoned wife during a portion of the period when she so lived apart from him constitute abandonment as that term is understood and used in Decedent Estate Law?

Reference is made to the history of the section under which petitioner claims and there is urged by respondents the proposition that this word " abandonment " has a meaning peculiar to Decedent Estate Law. In the report made by the Commission to Investigate Defects in the Laws of Estates which was submitted to the Legislature in 1928 and which is printed as a part of Legislative Document No. 69 for the year 1930, the Commission said: " The Commission proposes also to safeguard this right of election by protecting only the faithful wife. It proposes to exclude from its benefit a wife who is guilty of abandonment or who has been deprived of or who has obtained release from her marital status." The Commission submitted proposed legislation in conformity with its report and appended to the proposed section 18 of Decedent Estate Law a note which said, among other things: " New. The section as proposed gives an increased right to the surviving wife or husband in lieu of the existing rights of dower and curtesy. The reasons for this enactment, and its general purposes, are contained in the original report of the Commission to Investigate Defects in the Laws of Estates, at pages 12 and 13 * * *.

" The provisions of the section deny a right of election to either a widow or surviving husband in the following cases: * * *

"(c) Where either husband or wife has abandoned the other or the husband has refused or neglected to provide for the wife. Such an abandonment or refusal or neglect to provide, is intended, as our courts uphold as sufficient to sustain a judgment of separation under Section 1161 of the Civil Practice Act."

The legislation uses the same word, "abandonment," as is used in subdivision 3 of section 1161 of the Civil Practice Act. Subdivision 5 of section 18, here under consideration, was enacted just as proposed by the Commission. The express reference to section 1161 of the Civil Practice Act in the note of the Commission requires the holding that the Legislature intended no curious or artificial meaning for the word which it used. As used in the statute the word has exactly the meaning which is ascribed to it in matrimonial litigations in this State.

The report of the Commission says that it proposed "to safeguard this right of election by protecting only the *faithful* wife." Argument is made that this description of the protected spouse requires the court to hold that an unfaithful spouse may not elect. The term "abandonment," used in the proposed and enacted legislation, has already been noticed. It is useful to examine the Civil Practice Act and the Decedent Estate Law to see whether fidelity is made a test of the right of election and to see what matrimonial misconduct does *not* disqualify the spouse to make an election. The first and most notable fact is that the right of election is secured to every spouse — even an adulterous one — who continues to live in the matrimonial domicile and who is not guilty of abandonment. Next is the fact that the spouse (not guilty of abandonment) who has been guilty of cruel and inhuman treatment which would have warranted the deceased spouse in obtaining a separation is not barred from the right of election. Again the spouse (not guilty of abandonment) whose conduct made it unsafe and improper for the deceased spouse to cohabit with the survivor is entitled to elect. The status of surviving spouse is all that need be established by any of these three. The adulterous spouse (except only when marriage has been dissolved because of the adultery), the cruel and inhuman spouse and the spouse who so behaves as to render it unsafe and improper for the deceased to continue cohabitation may each take an intestate share against a will — if only no abandonment can be shown. Unfaithfulness *per se* is not a bar. Cruelty and inhumanity alone do not bar. Conduct endangering life and health of a spouse does not bar. Only "abandonment" is a bar. In a legislative scheme so delimited the word "abandonment" carries no connotation of infidelity and the adventitious use by the Commission of the phrase "the

faithful wife " does not suffice to alter the standard meaning of the word " abandonment."

That the reference to the " faithful " wife has no meaning such as is ascribed to it by the executors and the legatees of deceased is evident from the sentence immediately following that in which the word is used. The Commission there says: " It proposes to exclude from its benefits a wife who is guilty of abandonment or who has been deprived of or who has obtained release from her marital status." Thus it is evident that the Commission has in substance defined the word " faithful " by saying, negatively at least, that a spouse is " faithful " if not guilty of abandonment, if not chargeable with having gone outside this State to get a divorce not recognized here and if no judgment of divorce or separation has been entered in our courts against him or her.

The legislation proposed by the Commission which became chapter 229 of the Laws of 1929 dealt not only with changes in the rights of testators but also with the devolution of property in intestacy. The new section 87 which was added to the Decedent Estate Law by the 1929 legislation barred succession in intestacy to spouses who occupied the same status (*i. e.*, divorced or separated by judgment) or had done the same things (*i. e.*, procured an invalid decree outside this State) as barred the right of election under subdivision 3 of section 18 of the same law. It is notable that not until September 1, 1934, was the right of succession in intestacy made in all respects to conform to the complete scheme of section 18 of the Decedent Estate Law regulating elections against a will. Only in 1934 was succession in intestacy barred to a husband who had abandoned his wife or failed to support her and to a wife who had abandoned her husband. This cautious step-by-step recasting of the law by the Commission and by the Legislature forbids the idea that the word " abandonment " has any broad and unusual significance. The easily understandable text of subdivision 5 of section 18 bars the right of election only to the " wife who has abandoned her husband." Obviously this text does not bar a wife who has been abandoned *by* her husband.

Nor does the text say that a wife is barred from election if by reason of defenses interposable under the Civil Practice Act (Sections 1163 and 1168) she might fail to procure an affirmative judgment of separation. It does not say that the right to elect is synonymous with the right to support. However, the executors and the legatees argue that the general purpose of the legislation is to bar participation to a spouse who would not be entitled to maintenance if plaintiff in an action for a separation. The argument is unsound because the right to support is not made the

test. Cruel and inhuman treatment or conduct making cohabitation unsafe would operate, if interposed as a defense, to bar a claim for support. Yet a spouse so guilty, if not barred by actual judgment for either of such reasons from support in the lifetime of deceased, may elect against his will and may succeed to his property if intestate. Nothing but the fact of abandonment of her husband by a wife is the bar. The subdivision of the Decedent Estate Law deals only with this fact. It does not deal with eventual matrimonial rights which might arise out of this fact. It would be legislating into the law something which is not there to give to this legislative scheme any application so broad as to change the direct and specific terms of it and by judicial fiat to substitute for the ascertainment of a single fact (*i. e.*, abandonment) the inquiry whether in a purely suppositious lawsuit which can never be brought there could be interposed successfully defenses which are personal to one now incapable of presenting them.

The executors and the legatees argue that they have shown actual abandonment by the wife here because they have shown a long continued separation followed by secret cohabitation for some ten months out of eight years between petitioner and a man other than her husband. They refer to cases in Connecticut and in Pennsylvania as support for their position. (*Matter of Lodge*, 287 Penn. St. 184; 134 A. 472; *Matter of Bowman*, 301 Penn. St. 337; 152 A. 38; *Kantor* v. *Bloom*, 90 Conn. 210; 96 A. 974; *Alexander* v. *Alexander*, 107 Conn. 101; 139 A. 685.) Examination of the facts in such cases, however, discloses that they furnish no real aid in our problem. In each of them there were circumstances which would warrant a finding of abandonment within the meaning of the New York law of abandonment. Hence they do not establish that in other jurisdictions there is any different rule than here. In effect the basic argument of respondents is that adultery, though secret, is abandonment. That must mean an abandonment such as supports a judgment of separation in this State. Our rule is to the contrary. Secret adultery alone is not the basis to a separation decree (*Allen* v. *Allen*, 125 App. Div. 838), though if flaunted and accompanied by acts of public aggravation of the innocent spouse may support a decree of separation on the ground of cruelty (*Hofmann* v. *Hofmann*, 232 N. Y. 215). In this connection notice should be taken of that sentence of the report of the Commission hereinbefore quoted which says that " such an abandonment   *   *   *   is intended, as our courts uphold as sufficient to sustain a judgment of separation." That must mean of course a judgment *in favor of the deceased spouse*. Here no basis exists for an affirmative judgment in deceased's favor.

At most he might successfully defend an action by his wife if she had been able to serve him despite his planned avoidance of her and of this jurisdiction.

The moralists will argue that even if the law does not seem to bar an adulterous wife from an election in circumstances such as here disclosed, the court should strong-arm that result and write into the law of abandonment a wholly new concept. It is difficult here to whip up one's indignation to the point where one is ready to abandon settled principles. The argument of the moralists is an ancient one. They have had and will have their protagonists in the law courts. It is not without interest though to note that the ecclesiastical courts dealing with morals and applying the canon law have maintained complete calm in the presence of an adulterous husband protesting over the adultery of his wife whom he had driven wrongfully out of his home. To one desirous of exploring the subject, it is recommended that the vigorous dissent of Chief Judge CULLEN in *Hawkins* v. *Hawkins* (193 N. Y. 409, 417) be examined. That forthright jurist quotes with approval an excerpt from the Irish case of *Seaver* v. *Seaver* (2 Swab. & Trist. 665) which arose in the Consistorial Court of Dublin and which dealt with a case of restitution of conjugal rights to which the right of support was incidental.

" I know that, according to the modern code of morals and feelings, it is hard for the husband to comply with such a sentence. According to this code, a husband incurs no disgrace, and need feel no shame for his own adultery, while his honor is ruined totally by the adultery of his wife. The disgrace thus caused by another's guilt is capable of only one possible aggravation, viz., *if he forgives her*. This code cannot be recognized in a Court Christian; nor will a man, against whom adultery is charged and proved, be permitted to allege any reluctance to associate with an adulteress, because she happens to be his wife." (The italics were introduced by CULLEN, Ch. J.)

It may not be amiss to emphasize that the Commission expressed generally the purpose to prevent in the future injustices in the succession to property such as were common in the past. It recast property rights of spouses. It recommended the abolition of dower and curtesy. The latter could be barred by will, but dower could not. Dower was an estate favored by the law and was not barred by adultery nor even by an interlocutory judgment of divorce which had not become final prior to the husband's death. (*Van Cleaf* v. *Burns*, 118 N. Y. 549; 133 id. 540; *Bryon* v. *Bryon*, 134 App. Div. 320.) The Commission proposed to give " *an increased right* to the surviving wife or husband in lieu of the existing rights

of dower and curtesy." In a real sense spouses have purchased this new right of election by the surrender of ancient rights. A most liberal interpretation of the newly granted rights is alone consonant with the history of this legislation. Those who assert lack of right in the surviving spouse have the burden of establishing the facts required to be shown to bar the spouse. Once the status of surviving spouse is established the right to elect or to succeed presumptively attaches. This viewpoint has already been declared by this court (*Matter of O'Dwyer*, 151 Misc. 57). The contrary view expressed in *Matter of Sitkin* (151 Misc. 448) is unacceptable, notwithstanding the eminence of the writer of that opinion. The argument offered in support of the view there expressed is that the legislation is in derogation of the common law and must be strictly construed against one who seeks its benefits. Particular stress is laid too on the fact that the right of election is prefaced by a statement that it is " subject to the limitations, conditions and exceptions contained in this section." So the distinguished writer concluded that a wife seeking to elect must prove a negative and show that she had not abandoned her husband.

A simple test of this point of view is available. Until 1934 the surviving spouse took as of course a share of an intestate's property. This right of succession was a long-established common-law right of property. Applying the rule that the burden of proof is upon any one asserting a privilege or right in derogation of the common law, we must conclude that in cases of intestacy the burden of proving abandonment by a spouse is upon those who assert it and who thereby hope to establish the right and privilege to take the intestate's property free of any claim of the spouse. In a statute constituting a comprehensive scheme of property disposition the phrases dealing with correlative rights must be given similar interpretation. It cannot have been the legislative intention to put the burden of proof of a negative on a spouse claiming the right to elect while placing the burden of proof of abandonment by a spouse on those who assert it to bar succession in a case of intestacy.

Only a liberal interpretation of the rights of spouses conforms to the view point expressed by the Commission and to its declared purpose to give *increased* rights to them. Putting the burden of proof in every case on those who assert that a spouse is not entitled to elect or to succeed will tend to keep within bounds, too, the post-mortem matrimonial litigations otherwise threatened. It is rare that the whole truth in such a controversy can be learned by a court even when both parties are in the flesh before the court.

When one is dead and the other barred from testifying because of section 347 of the Civil Practice Act the chances of reaching a right result are slender indeed. Gloss can always be put on the attempt to litigate these issues but the cold fact is that greed to keep or to get property and the pursuit — post-mortem — of family vendettas are usually the motives which drag family skeletons into the light from the closets in which they were supposed to have been carefully locked and which stir up controversies which the deceased refused to initiate. Such litigations should be discouraged.

Decision was reserved on two motions to strike out evidence. Petitioner's motion to strike out the proof respecting her residence in Pittsburg is denied. While that proof was offered on a legal theory eventually rejected by the court it should remain in the record. The motion of respondents to strike out the testimony read by petitioner from her own deposition taken by respondents as an adverse party before trial is denied. The right of either party to read from the deposition of a party theretofore taken is not defeated by the presence in the forum of the party so examined, though the presence of a witness theretofore examined would bar the use of his deposition. (Civ. Prac. Act, § 304; *National Fire Insurance Co.* v. *Shearman*, 223 App. Div. 127.)

In this case the deceased abandoned petitioner and was not abandoned by her. That state of facts entitles her to elect against his will.

Submit, on notice, decree confirming as valid the election heretofore made by petitioner against the will of deceased.