In the Matter of the Estate of STEPHANIE WAGNER, Deceased.

Surrogate's Court, Kings County, May 27, 1940.

*William S. Jacknow* [*Max J. Pershan, Harry Silver* and *Abraham A. Kranker* of counsel], for John F. Otremba, petitioner.

*Aaron F. Goldstein* [*Harry M. Krokow* of counsel], for Wladyslaw Wagner, respondent.

WINGATE, S. This is an application for letters of intestate administration made by a nephew of the deceased. It is opposed by her admitted husband. Since under section 118 of the Surrogate's Court Act a surviving spouse of an intestate is *prima facie* entitled to letters in preference to any other person, the burden

is imposed upon the nephew to demonstrate the disqualification of the husband. (*Matter of Green*, 155 Misc. 641, 649; affd., 246 App. Div. 583; *Matter of Vogel*, 251 id. 741.)

He predicates his position on the assertion that the husband is not " entitled to take or share in the personal property " of the deceased within the language of the first unnumbered paragraph of section 118 of the Surrogate's Court Act, which, if true, would debar him from the right to letters. (*Matter of Wolff*, 161 App. Div. 255, 262; *Matter of Bunimowitz*, 128 Misc. 518, 520; *Matter of Lawson*, 158 id. 902, 903.)

His reliance in this regard is predicated on subdivision c of section 87 of the Decedent Estate Law which denies a right of intestate distribution " to a husband who has neglected or refused to provide for his wife, or has abandoned her." The question for decision is, therefore, whether the nephew has demonstrated either of these derelictions on the part of the husband.

The record indicates that the decedent and the respondent intermarried in 1897 and lived together until on or about April 14, 1908, when the decedent was adjudicated an incompetent and committed to Kings Park State Hospital. On the following June seventh she was paroled in the custody of a nebulous figure, named Victor Schwadtz, whom no one appears able to identify, and whose relationship to her, if any, appears definitely not to have been that of a brother as he represented to the hospital authorities. The indication of the record is that upon her release she made no effort to return to her husband but went to the home of this Schwadtz person at 259 Kent avenue, Brooklyn.

On July 7, 1908, she was discharged by the hospital as having recovered her sanity. Her subsequent movements are not clearly indicated except that some time later in the year she appears to have taken up her residence in Orange county.

Apparently some time between 1908 and 1914 the husband began a relationship with a woman by the name of Catherine Supnowska, since on May twenty-fifth in the latter year the decedent reappeared in his life long enough to hale him before a magistrate on a charge of bigamy. Both he and the woman then testified that they were not married and the complaint was dismissed. So far as disclosed, this was the sole effort of the decedent to contact her husband from the time she was committed as insane until she died.

On one of the later days of the trial, after the court had commented on the absence of any indication of a desire by the decedent for support by her husband, two of her nephews obligingly came forward with testimony that they, respectively in a saloon and at

a fruit stand, had chanced to meet the husband and had urged him to contribute to her support. The court expressly rejects this testimony as incredible. Even if it were to be accepted as true, however, it does not supply the omission, since a husband owes an obligation for support of his wife only if she is living with him or her absence is legally justifiable. If she, herself, has breached her marital duties, she may not call upon him to perform his obligation in this regard. (*Mirizio* v. *Mirizio*, 242 N. Y. 74, 82; *Matter of Roessler*, 171 Misc. 306, 308.)

A husband may ordinarily not be compelled to support his wife away from his home, even though such home may be disagreeable to her (*People ex rel. Commissioners of Public Charities* v. *Cullen*, 153 N. Y. 629, 635; *People* v. *Schenkel*, 258 id. 224, 226), but even were the contrary the fact, there is here no indication that there was ever any refusal by the husband to provide support for the decedent or that she or any person authorized to speak for her ever intimated that any contribution by him was needed or desired. Under such circumstances he may not be deemed to be in default in respect of his obligation for support. (*Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 387.)

This reduces the issues to the single question of whether the husband abandoned the decedent within the contemplation of subdivision c of section 87 of the Decedent Estate Law. The initial termination of their cohabitation occurred without the fault of either by reason of her adjudication of insanity. There was here no abandonment. When, however, she regained her sanity, it was her obligation to resume her residence with him. It was determined in *Manufacturers Trust Co.* v. *Gray* (*supra*) that if a husband decides to move to another locality, and there establish his home, it must be held in respect of a wife who refuses to accompany him that she " in a legal sense abandoned him." The present case is much stronger. When free to do so she failed to return to his home from which she had originally departed through no fault of either. Instead, she accompanied an unidentified man to his home and although apparently sufficiently aware of the movements and whereabouts of her husband to secure his presence before a judicial tribunal when she wished to make trouble for him, never personally sought him out or endeavored to resume her marital domicile. In other words, in July, 1908, at the latest, she abandoned him.

The time of the inception of the illicit relationship between the respondent and Catherine has not been shown. It is immaterial in any event. The issue is whether the respondent " abandoned " the decedent. This word " carries no connotation of infidelity,"

" unfaithfulness *per se* is not a bar." (*Matter of Green*, 155 Misc. 641, 645; affd., 246 App. Div. 583.) It might have justified the grant of a divorce to the decedent. It had no other effect.

The authorities cited by the petitioner are not even remotely in point on the facts. *Matter of Lodge* (287 Penn. St. 184; 134 A. 472), from which he quotes at length, is not even academically interesting as it is founded on the language of a Pennsylvania statute which differs materially from that in force in this State.

On the record as a whole it must be determined that the petitioner has failed to sustain the burden of demonstrating that the conduct of the respondent is within the description of subdivision c of section 87 of the Decedent Estate Law. It follows that the petitioner is not entitled to the award of letters of administration but that they must issue to the respondent pursuant to the provisions of section 118 of the Surrogate's Court Act upon his due qualification as required by law.

Enter decree on notice in conformity herewith.