MARCO MASCIARELLI, Plaintiff, v. DELAWARE & HUDSON RAILROAD COMPANY and JOHN A. HADDEN and ROBERT E. WOODRUFF, as Trustees of the Property of the ERIE RAILROAD COMPANY, Defendants.

BELFINI PICCIRILLI, Plaintiff, v. DELAWARE & HUDSON RAILROAD COMPANY and JOHN A. HADDEN and ROBERT E. WOODRUFF, as Trustees of the Property of the ERIE RAILROAD COMPANY, Defendants.

Supreme Court, Trial and Special Term, Broome County, April 27, 1942.

*Mangan & Mangan* [*H. Lee White* of counsel], for the plaintiffs.

*Meagher & Meagher* [*Jefferson F. Meagher* of counsel], for the defendants.

DEYO, J. These two actions were brought to recover damages arising out of a railroad crossing accident. The jury has returned verdicts of no cause of action in each instance. The plaintiffs now seek a new trial for error alleged to have been committed by the trial court in permitting the defendants to read into the record a certain deposition and in refusing to allow evidence of other accidents at the same crossing to be introduced.

· Sometime prior to the trial, at the instance of the plaintiffs and over the objections of the defendants, an order was granted directing an examination before trial of both defendants as adverse parties, and requiring that " the defendants appear and be examined by the flagman or watchman who was employed at the railroad crossing referred to in the complaints, as to his own employment, the nature and extent of his duties, and as to all other relevant facts and circumstances relating to said accident * * *." This order was sought, not for the examination of the watchman as a witness, but as a managing agent or employee of an adverse party, and was granted on the theory that his duties were not confined to mere minor details connected with the operation of the railroad, but rather, so far as that crossing was concerned, were of a representative and managerial nature akin to those of an elevator operator (*Bregman* v. *Edbro Realty Co., Inc.,* 135 Misc. 87; *Loring* v. *Dime Savings Bank of Brooklyn,* 247 App. Div. 809), or a motorman or conductor (*Enequist* v. *Brooklyn City R. R. Co.,* 216 App. Div. 730), or the driver of a horse and wagon figuring in an accident (*Ida* v. *Borden's Farm Products Co., Inc.,* 247 App. Div. 760). Apparently, the testimony which he gave did not come up to the plaintiffs' expectations, for they did not seek to read it into the evidence. The defendants, however, over the plaintiffs' objections, were permitted to read it, and therein lies the claim of error.

I can give little credence to the plaintiffs' present argument that despite the order granted to them, the watchman was actually examined as a witness, and not in his capacity as representing the corporate defendant. Section 288 of the Civil Practice Act

authorizes the taking of a deposition of a party without limitation. As to a witness, however, the case is different and probable unavailability must be shown. If the party happens to be a corporation, then section 289 of the Civil Practice Act prescribes what officers or employees may be examined. Such examination, however, is still that of the corporation itself. (McCullen on Examinations before Trial, p. 72.) " There is no authority to examine an officer of a corporation as such, apart from an examination of the corporation." (*Jacobs* v. *Mexican Sugar Refining Co., Ltd.*, 112 App. Div. 657.) This section does not permit the examination of a person simply because he happens to be an employee of the corporation. Such person must not only be an employee, but one who comes within the category set forth, and who, by the nature of his duties, may be said to represent the company and thus be qualified to speak for it concerning the matter at hand. (*Friedman* v. *New York Central R. R. Co.*, 206 App. Div. 169.) The intent of the two sections is clear. When the party whose deposition is to be taken happens to be a corporation, obviously some natural person must be interrogated as representing the corporate entity. Section 289 lists who those persons shall be. This does not mean, as the plaintiffs suggest, that the individuals become parties, nor does it mean that they may be examined on matters unrelated to their corporate duties. Their acts and their admissions are chargeable to the corporation only if within the scope of their employment. The courts have repeatedly recognized that the examination of such officers or employees is an examination of the corporate party and not the examination of a witness. (*McGowan* v. *Eastman*, 271 N. Y. 195, 198; *General Ceramics Co.* v. *Schenley Products Co., Inc.*, 262 App. Div. 528; *Tieman* v. *Davies, Turner & Co., Inc.*, 261 id. 376; *Loonsk Bros., Inc.,* v. *Mednick*, 246 id. 464; *Searle* v. *Halstead & Co.*, 139 id. 134; *Etter* v. *Early Foundry Co.*, 164 Misc. 88.) Nothing in the decision in *Miners & Merchants' Bank* v. *Ardsley Hall Co.* (113 App. Div. 194) or *Schupp & Sons, Inc.,* v. *Barnett* (210 id. 546), cited by the plaintiffs, seems to me to warrant a holding to the contrary.

Being the deposition of a party taken at the instance of an adverse party, no proof of unavailability is necessary as a prerequisite to its use. (Civ. Prac. Act, § 304; *Murphy* v. *Casella*, 263 App. Div. 1001; *General Ceramics Co.* v. *Schenley Products Co., Inc., supra; Tieman* v. *Davies, Turner & Co., Inc., supra; National Fire Ins. Co.* v. *Shearman*, 223 App. Div. 127, 128; *Shapiro Bros. Factors, Inc.,* v. *Moskowitz*, 33 N. Y. Supp. [2d] 67.)

The next question is whether or not such deposition may be read by the party itself. Section 303 of the Civil Practice Act in plain

and unambiguous language states that it may be read "by either party" and "against the party who * * * caused the testimony to be taken." I am impressed by the ingenuity rather than the logic of plaintiffs' arguments that section 303 of the Civil Practice Act applies only to depositions of witnesses and not to parties. The Legislature has specifically excepted depositions of parties taken at the instance of an adverse party from the limitations of section 304. Had it intended to impose a similar limitation upon the scope of section 303 a similar provision would have been inserted. In *Berdell* v. *Berdell* (86 N. Y. 519), which arose under section 881 of the Code of Civil Procedure, the forerunner of section 303 of the Civil Practice Act, the court said (p. 521): " A party whose deposition has been taken before trial at the instance of an adverse party has the right, if he desires it, to read such deposition in evidence on the trial in his own behalf (Code, § 881), and hence he has a substantial right that it shall be legally taken so that he can use it. Otherwise, a party may be harassed by an examination which will in no way benefit him, and yet compel him to disclose to his adversary in advance the facts upon which he relies to sustain his case." Directly in point is *Matter of Green* (155 Misc. 641, 650; affd., 246 App. Div. 583; motion for leave to appeal denied, 246 id. 711; 270 N. Y. 675), wherein Surrogate DELEHANTY specifically and unequivocally held that the motion of a respondent to strike out the testimony read by petitioner from her own deposition, taken by respondent as an adverse party before trial, should be denied. The only case which has been called to my attention which disputes this right so clearly granted by section 303 is *Zeldman* v. *Electrolux, Inc.* (161 Misc. 849), wherein MORRIS, J., of the Municipal Court of New York, stated by way of dictum that it was the applicant only who might read the deposition. I can only repeat Mr. Justice COLLINS' remarks in *Reliable Textile Co., Inc.*, v. *Elk Dye Works, Inc.* (177 Misc. 926, 928), where he said in discussing the *Zeldman* case (*supra*): " The rationale of that case does not accord with my conception of the nature and purpose of a deposition."

The plaintiffs dwelt at some length on the possibility that the jury might not have believed the watchman had .they seen him, and that they were estopped from attacking his credibility. Obviously, the same argument could be made relative to the use of almost any deposition, and the plaintiffs' objections seem to me to be more properly directed to the Legislature than to the courts. Furthermore, this is a matter which they should have considered before seeking the examination. There is little substance to the argument that the plaintiffs have been deprived of the right of cross-examination for, as Professor Wigmore points

out, the right of cross-examination is intended only as a protection against the testimony of someone called by an opponent, and the plaintiffs, having had the benefit of direct examination, have had all that they are entitled to. (5 Wigmore on Evidence [3d ed.], § 1389.)

The plaintiffs also contend that at most the deposition was that of the D. & H. Railroad which, it was stipulated, employed the watchman and controlled the crossing, and that it should not have been read " in favor " of the Erie. We need not be concerned with this argument, for the deposition was at no time read " in favor " of the Erie. The court charged, without objection, and as clearly as his ability permitted, that the liability of the D. & H., if any, was predicated upon the failure of the watchman to perform his duties, while the liability of the Erie, if any, was predicated upon the manner in which it operated the train in question. The acts of the watchman, therefore, did not affect the case, so far as the Erie was concerned.

The other claim of error is predicated upon the court's refusal to permit evidence of other accidents at the same crossing, to show that a dangerous condition existed, of which the railroad should have had knowledge, and that the watchman was incompetent. As a general rule, of course, proof of similar accidents is not admissible in negligence cases. (*Dye* v. *D., L. & W. R. R. Co.* 130 N. Y. 671, 673.) In a limited class of cases, however, where liability is predicated upon a defect in or the dangerous condition of some " work of human construction," evidence of prior accidents is admissible. (*Quinlan* v. *City of Utica*, 11 Hun, 217; affd., 74 N. Y. 603.) First, however, it is necessary to show the dangerous condition of the " object which caused the accident." (Richardson on Evidence [5th ed.], p. 125.) No defect is alleged here. No " work of human construction " failed to function. This accident occurred because someone was careless, and the question for the jury to decide was who that someone was. The fact that there may have been one or one hundred other accidents could not possibly have aided them in reaching their determination on this question. Moreover, it goes without saying, that no other accident of this type could have occurred under exactly the same circumstances, and in the absence of such a showing, evidence of prior accidents, due to a defect or to improper construction, is not admissible. (*Morrow* v. *Westchester Electric R. Co.*, 54 App. Div. 592; affd., 172 N. Y. 638; *Greasy* v. *Eastern Greyhound Lines*, 249 App. Div. 59.) We are not dealing with a case of a hole in the street, a defective step or a broken rail. We are dealing with persons and their reactions to given circumstances. In the *Morrow* case (*supra*) the court said

(p. 594): " If it had been shown that there was some peculiarity in the construction of the track at a given point, and that the car on which the plaintiff was riding left the track at that point, it would have been proper to introduce evidence tending to show that other cars had left the track at the same point under similar conditions, as this would have a tendency to show that there was a defect in the track, and that the defendant had had notice of this defect by reason of the fact that other accidents had happened there, and a failure to remedy the defect would constitute negligence, or at least the jury would be justified in finding that the defendant had failed in the discharge of its duty to the plaintiff; but beyond this it is doubtful if the authorities in this State sanction the introduction of evidence of independent accidents." Nor was the fact that there may have been a prior accident at this crossing admissible to show that the watchman was incompetent. Even if we assume that some prior accident was the result of the watchman's negligence, still that single act would have no bearing on whether or not he was negligent on the night in question. " But a single act of casual neglect does not, *per se*, tend to prove the party to be careless and imprudent, and unfitted for a position requiring care and prudence. Character is formed and qualities exhibited by a series of acts, and not by a single act." (*Baulec* v. *New York & Harlem R. R.*, 59 N. Y. 356, 363. See, also, *Warner* v. *New York Central R. R. Co.*, 44 id. 465.)

The motion to set aside the verdicts is denied.