John E. Tobin, J.
In this nonpayment summary proceeding, the court is called upon to determine the effect, if any, of the current wage, price, and rent freeze upon the transactions of the parties involved herein. The facts adduced are as follows: The petitioner landlord and respondent tenant were parties to a lease which expired on July 31, 1971, which lease called for a monthly rental of $325. Prior to the expiration of said lease, the landlord advised the tenant that, should the tenant desire to continue in occupancy of the premises beyond the expiration of the lease, the new rent would be $550 per month. Various written and telephone communications were thereafter exchanged between the parties, and, according to uncontested allegations *970 contained in the affidavit of the landlord, the landlord agreed to allow the tenant to continue in occupancy beyond July 31, 1971 as a month-to-month tenant at a rental of $550 per month. In any event, the tenant did continue in possession.
On August 2, 1971, according to the landlord, the tenant and the landlord, through the latter’s attorney, “ agreed ” to all the terms of a new lease for a term of two years at a monthly rental of $550. The tenant agrees that it ‘ ‘ negotiated with the landlord ’ ’ for a new lease commencing August 1, 1971. On or about August 13, 1971, the landlord sent, and the tenant received, the unexecuted lease for the purpose of having the tenant execute it. On Sunday, August 15, 1971, before the lease was formally executed, the President of the United States instituted the wage, rent and price freeze which became effective immediately.
It appears that the new lease was never executed. Citing the President’s Executive Order, the tenant tendered his rent in the amount of $325, which tender was refused by the landlord. Thereafter, the landlord instituted the present proceeding for nonpayment of the August rent.
The issues thus before the court are what agreement, if any, was made between the parties, and when was that agreement made. If it can be said that agreement was reached before August 15, 1971, then the rent freeze would not be applicable. Conversely, if no agreement was reached, the landlord would not be permitted to increase the rental during the period of the freeze.
As part of his defense, the tenant has submitted a letter, marked Exhibit “ P ”, from the Office of Emergency Preparedness, the agency charged with enforcing the wage, price and rent freeze.
That letter, dated September 15, 1971, was sent in response to an inquiry by the tenant, and in pertinent part reads as follows: “ Your letter states that your client was a commercial tenant in these premises under a lease which expired July 13, 1971. During the month of August and the period to the present date the client has occupied the premises but no lease has been executed by the parties. On August 23 your client tendered to the landlord a check in the sum of $325 which was the rent under the previously expired lease. This was not accepted by the landlord. Thereafter the landlord commenced eviction proceedings in the 'City Court of Yonkers * * * against your client.
“ Please be advised under Sec. 3,1706 of the Stabilization Program Ouide Lines of the Office of Emergency Preparedness it has been held that the landlord is in violation of the freeze if he .attempts to evict a tenant for refusal to pay rent in excess of *971 the ceiling rent applicable to his premises. The section refers to Section 10 (a) of the OEP Economic Stabilization Regulation #1. This Section provides that any practice which constitutes a means to obtain a higher price, wage, salary or rent, than is permitted by this regulation is a violation of this regulation.
“ In our opinion, since the rent of the premises is frozen during the freeze period at $325, this proceeding would appear to be in violation of Section 10 (a).”
Ordinarily, the court would consider itself bound by the opinion of this agency in matters concerning the “ freeze ”, However, it is obvious from this letter that the OEP did not have all the pertinent facts available to it, and certainly did not have the facts as seen from the landlord’s point of view. Under the circumstances, to blindly follow the opinion of OEP as set forth in the above letter would be to subvert the adversary process and to deny the landlord his day in court.
On the papers submitted, the court finds as a fact that the parties had come to an agreement on the terms of a new lease, including a .rental of $550. Though a formal agreement was not executed, a meeting of the minds on these terms did occur. Support for this conclusion comes not only from the landlord’s uncontested allegations to this effect, but also from implicit admissions found in the tenant’s brief and correspondence to the landlord. The tenant asserts that the parties “ negotiated a new lease, a copy of which the tenant received on or about August 13, 1971.” He does not allege that the negotiations were incomplete or that the terms of the lease he received were objectionable to him. In his reply memorandum, the tenant states, 1 ‘ ant>, no matter how many times the parties orally or tacitly agreed to the terms of the lease, it does not change the fact that it was not executed by the parties ”. Finally, in a letter to the landlord dated August 23,1971, the tenant states “ As has been indicated to [the landlord] and his legal counsel, we are prepared to continue the lease at the $325 rental until restrictions are lifted, and are prepared to accept an increase in rent thereafter.” It is not unreasonable from these facts to conclude that the tenant had agreed to the $550 rental as one of the terms of the new lease, that this agreement took place before the implementation of wage, price, and rent freeze, and that he is now seeking to deny this fact so as to be able to hide behind the freeze.
It is true that the agreement was never formally executed and not in writing, and thus it falls within the applicable Statute of Frauds (General Obligations Law, § 5-703, subd. 2) which provides: “ A contract for the leasing for a longer period than one year, or for the sale of any real property, or an interest *972 therein, is void, unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing. ’ ’
Although under that Statute of Frauds, an oral agreement for a lease of more than one year, such as the one involved herein, is void, yet, such oral agreement may be enforced by either party thereto against the other unless the Statute of Frauds is properly pleaded as a defense in any action brought thereon, or asserted by a motion to dismiss under CPLR 3211 (subd. [a]). (See CPLR 3018, subd. [b]; Matthews v. Matthews, 154 N. Y. 288; see 1 Rasch, N. Y. Landlord and Tenant [2d ed.], §§ 43, 52.) As the Statute of Frauds was not so pleaded in the instant case, the court will give effect to the agreement, and sustain the landlord’s petition.
For the foregoing reasons, the landlord is awarded possession.