Richard W. Wallach, J.
For over five years prior to the commencement of this nonpayment summary proceeding, petitioner resided in apparent domestic tranquility as one of four fee-owning tenants in common of a two-family house in Belle Harbor, Queens. He became the sole owner'in fee of the premises by deed dated March 15, 1971. Almost five months later, on August 10, 1971, he made his debut into the rentier class to the extent of executing a written lease with respondent for the *211 ground floor at a rental of $340 per month for a two-year term commencing September 15, 1971.
Five days thereafter on August 15, 1971, President Nixon, acting under the authority of the Economic Stabilization Act of 1970 (P. L. 91-379, 84 IT. S. Stat. 796), promulgated Executive Order No. 11615 (36 Fed. Beg. 15727) freezing all prices and rents, effective forthwith for a 90-day period. Bespondent entered into possession of the ground floor and paid the rent reserved in the lease for September and October, 1971. In November, however, tenant tendered $70 as the sum allegedly then due landlord, based upon tenant’s contention that $250 was the legal monthly rent during the Phase I freeze period. Petitioner landlord rejected this tender, and this suit followed, presenting some novel issues arising under the Federal rent-freeze law and regulations.
The stipulated facts, testimony, and exhibits establish that the instant premises were “ new property ” within the meaning of section 300.509 of the Economic Stabilization Begulations of the Office of Emergency Preparedness (IT. S. Code, Cong, and Administrative News); i.e., they had not been under lease for one year prior to the lease transaction. Under subdivision (e) of that section, the base price (or legal rent under the freeze) is determined by consideration of the average arm’s length price received by persons leasing comparable property in the same marketing area.
Tenant claims that the rent reserved in the lease is in excess of the legal rent. It was therefore incumbent upon tenant to assume the burden of proof on this score, and to adduce competent evidence that the $340 per month rental was in excess of that returned on ‘ ‘ comparable property in the same marketing area.” In the absence of any such proof the court must conclude that the rent fixed in the lease at arm’s length between the parties was competitive with comparable property in the same marketing area, and therefore the legal rent.
Thus to assign the evidentiary burden in this case, is consistent with “ the rule that the burden of proof is upon any one asserting a privilege or a right in derogation of the common law” (Matter of Green, 155 Misc. 641, 649); it is also harmonious with the established concept that the party asserting rescission of a bargain (here, to be sure, a partial and one-sided reformation) has the burden of proving it (Matter of Smathers, 152 Misc. 774, 775). This is not to suggest that where the rent is related to a base price to be fixed by a substantial number of transactions by the same landlord (OEP Economic Stabilization *212 Regulations, § 300.507, subd. [b]) the burden should not be cast upon landlord who has sole access to the information. For ‘1 Where a party has knowledge of a fact only slight evidence is requisite to shift on him the burden of an explanation ” (Matter of Byrnes, 51 Misc 2d 567, 568). But in the instant case, no inequality of access to market information exists.
At least one court of this State has held that a leasing agreement made prior to the freeze date is ipso facto outside the reach of national price control, even though rental payments in excess of base rent commence within the 90-day period (Wiederkehr v. Cledon Corp., 67 Misc 2d 969). This court declines to follow that decision of the Yonkers City Court, however, since it appears squarely to conflict with paramount Federal law. (See E. S. Regs., § 300.507, subd. [b] and Economic Stabilization Circular No. 101 [subd. 3], where the test is expressly stated to be the incidence of payment during the 90-day freeze period, rather than the timing of the agreement.) Be that as it may, we rest in this case upon tenant’s total failure to prove that the rental of this real property interest, newly created at the threshold of the freeze period, exceeded comparable property then available in Belle Harbor, Queens.
This court also rejects tenant’s argument, that landlord’s nonproduction of “records” upon tenant’s demand prior to suit, is sufficient to taint the lease with illegality under section 300.015 of the Economic Stabilization Regulations. In this two-family house situation, the only pertinent ‘‘ record ’ ’ was the very transaction to which tenant himself was a party. Moreover, the record-keeping duty enjoined upon a landlord by that section of the regulations is primarily addressed to justification of a post-freeze rent increase under Phase II. It has no rational application here.
Accordingly, landlord is entitled to final judgment for arrears in the sum of $340, with interest from November 15, 1971, and to further include in such judgment the additional sum of $50 for reasonable counsel fees as provided in the lease and stipulation.