## Bowman's Estate.

Argued May 26, 1930.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Chas. W. Eaby,* with him *Joseph T. Evans,* for appellant, cited: Laidley v. Rowe, 275 Pa. 389; O'Malley's Ins. Co., 47 Pa. Superior Ct. 533; Phillips's Est., 271 Pa. 129; Cooke v. Doron, 215 Pa. 393; Munson v. Crookston, 219 Pa. 419; Schreckengost's Est., 77 Pa. Superior Ct. 235; Wilson's Est., 297 Pa. 348; Hayes's Est., 23 Pa. Superior Ct. 570.

*G. T. Hambright,* with him *M. G. Sheaffer* and *John E. Malone,* for appellees, cited: Lodge's Est., 287 Pa. 184; McClurg's App., 66 Pa. 366; VanDyke v. VanDyke, 135 Pa. 459; Whelan v. Whelan, 183 Pa. 293; Middleton v. Middleton, 187 Pa. 612; Hedderson v. Hedderson, 35 Pa. Superior Ct. 629; Bauder's App., 115 Pa. 480; Sharp v. Sharp, 65 Pa. Superior Ct. 181; Irwin's App., 5 Wharton 577; Rhode's Est., 232 Pa. 489; Braum's Est., 86 Pa. Superior Ct. 245; Stauffer's Est., 89 Pa. Superior Ct. 531; Crawford's Est., 81 Pa. Superior Ct. 222; Arnout's Est., 283 Pa. 49.

OPINION BY MR. JUSTICE KEPHART, June 21, 1930:

Sallie Bowman, the widow of Gerson L. Bowman, elected to take against the will of her deceased husband, and claimed a widow's exemption of $500 and one-third of his estate. The court below found that she had wilfully and maliciously deserted her husband for a period of one year prior to his death, and, by so doing, had forfeited her right to participate in his estate, under section 6 of the Act of June 7, 1917, P. L. 429. The conclusion that she intended wilfully and maliciously to desert could have been predicated on two grounds; the court below, however, thought it necessary to sustain only one.

We discussed in Lodge's Est., 287 Pa. 184, the intent and purpose of section 6 of the Act of 1917. It is contended by appellant that the separation here was by consent; but, notwithstanding the amicability of the consent, if one of the parties during the period of separation commits an act for which the other party could

340

have procured a divorce, the element of consent thereafter is turned into wilfulness and malice. If, after separation, the wife commits adultery, the separation from that time on becomes desertion within the meaning of the act. It deprives her of all interest in the estate: Lodge's Estate, supra. The present record shows an adulterous relationship for more than a year prior to the husband's death. Notwithstanding this fact, if in the meantime the husband condones the offense, the wife would reëstablish her right to her share of the estate; but where the condonation is not accompanied by cohabitation and all that the term means, and desertion has continued to the death of the husband, the evidence to prove such condonation should be such as would clearly establish the facts. Under such circumstances, the wife's testimony evidencing condonation, without corroborating circumstances, would not be sufficient. Here the desertion continued over a period of fourteen years. In all the various places in which claimant lived, her lover accompanied her, and at some places they lived as man and wife. Claimant testified that marital relations were resumed, on one or possibly two occasions, under most remarkable circumstances, although she never returned to her husband. We are not satisfied the wife's testimony was sufficient to show a condonation of her offense. The testimony as to this feature was characterized by the court below as most improbable. With this we agree. We shall discuss this feature without considering at this time her competence to testify.

Among the items of evidence were the directories of the City of Reading. They showed claimant was listed in the usual way as the wife of Adams, the person accused as her paramour. The same listing occurred during the four years they lived in Reading. The evidence was objected to for the reason that there was nothing to show the authenticity of the directory or the correctness of the record, and, further, that it was not the best evidence in the case. It was not denied that the books were

the general directories issued for the city, and claimant admitted that she lived at the address named, with Adams in the same house. The listing standing alone would be of little value as evidence. It alone would not show an adulterous relationship unless perhaps it appeared she knew of her name being so placed; but it would show common repute in the neighborhood and would tend to show desertion; these acts are inconsistent with an amicable separation. The court below did not base its conclusion on these items of evidence, nor on the record of a divorce proceeding initiated against appellant by the decedent for desertion, though incomplete because of death. The testimony in the present hearing, however, would have supported the libel, and the record was therefore immaterial.

One of the children testified that he saw the hotel register and from it learned his stepmother had registered with Adams, as man and wife, at the Sinking Springs Hotel, that his stepmother had been pointed out by the hotelman as being the "wife" there registered, that he had a conversation with her at that place, asking her to return to and live with his father and she refused. They were at the hotel eleven months. He also testified to the time and manner of the stepmother's departure, to establish the date of desertion. Another child and other witnesses gave evidence along the same line. Claimant in rebuttal testified in full to matters occurring before the death of her husband, that the separation took place by consent, that her husband visited her frequently thereafter, that they had marital relations, and denied any adultery with Adams or desertion from her husband. Her testimony was all objected to for the reason that she was not a competent witness under the Act of 1887. Where a widow claims against the will of her husband and seeks to establish her right by matters occurring in her husband's lifetime, she is not a competent witness under the Act of May 23, 1887, P. L. 158, section 5, clause e. To make the witness compe-

tent, all the parties in interest must claim by devolution, in which case the children and the widow would stand on an equal footing; here, however, the widow's right is fixed by devolution or descent, while the children's rights are fixed by will or by purchase: Munson v. Crookston, 219 Pa. 419.

The Act of June 11, 1891, P. L. 287, is called on to aid the widow. This act is one that qualified "the surviving party to testify to relevant matters occurring between or in the presence of himself and another person who is a competent witness and has testified against him in reference to such matters": Krumrine v. Grenoble, 165 Pa. 98, 107. "By the Act of 1891 a surviving party is made competent to testify to any relevant matter which occurred before the death of the other party, if such matter occurred between the party himself and a person who is living and who testifies against him at the trial or if such relevant matter occurred in the presence or hearing of such other living and competent person": Kauss v. Rohner, 172 Pa. 481, 488. To this must be added the construction that the surviving party is not competent to testify unless the living witness is called (Roth's Est., 150 Pa. 261; Wright v. Hanna, 210 Pa. 349), and then only to such matters as have been testified to and which it is proposed to contradict. The children testified to a conversation at the hotel; that rendered the wife competent to contradict such testimony, as the matter occurred between herself and them, but it did not render her competent for any other purpose: Phillips's Est., 271 Pa. 129, 133. The wife would have been competent to rebut statements she is alleged to have made and to testify to any matter which *occurred* in the presence of the children, but would not be competent to testify to condonation, how the desertion arose, or to other matters which the children have not testified to. "It will be observed that the subject-matter of the proposed contradicting evidence must be something that *occurred* between the witness and another liv-

ing competent person, or something that *occurred* in the presence or hearing of such other living competent person. Now, the offers of contradictory proof by the plaintiff were not as to matters occurring between her and the other witnesses, but simply to the same matters of fact to which the others had testified, only that they were different from the description of them given by the other witnesses. The testimony was offered for the purpose of contradiction. We think the offers were not competent and that they were properly rejected by the court below...... The Act of 1891 was intended to apply to conversations, or to *events transpiring between* or in the presence or hearing of the witness and the other parties, and not to mere physical facts or to states of facts described by the other witnesses in their testimony. If it were not so there would be no practical limit to the general capacity of the surviving party to testify, and the act certainly was not intended to confer general capacity to testify to anything simply because it would be contradictory to the testimony of some other witness": Thomas v. Miller, 165 Pa. 216, 220; see also Steel v. Snyder, 295 Pa. 120; Patterson v. Hughes, 236 Pa. 315; Kline v. Edwards, 72 Pa. Superior Ct. 253. The children testified they found she and Adams were registered at the hotel as man and wife, with the circumstances indicated above. Can the wife deny this? What has been described is a state of facts,—a condition that existed. It was not the occurrence of an event in the presence of, or a transaction between, the parties, and under the strict letter of the statute the widow could not deny it.

Decree affirmed at the cost of appellant.