392 A.2d 1371

**In re ESTATE of Harry McCLAIN, Deceased.**

**Appeal of Jane Artis PALMER, Ruth Artis Lipinsky, Margaret Artis Huffman and Hazel Artis Baird, Caveators and Petitioners.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1978.

Decided Oct. 27, 1978.

Thomas J. Godlewski, Greensburg, for appellants.

Gene E. McDonald, Bernard F. Scherer, Lightcap, McDonald & Moore, Latrobe, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On May 18, 1971, Harry McClain entered into a "Unitrust Agreement" which named himself as income beneficiary for life, remainder to St. Vincent College of Westmoreland County, Pennsylvania (one of the appellees herein) upon termination of the trust at the death of McClain, the donor. The agreement also named St. Vincent College as trustee. On March 29, 1972, Harry McClain made certain additions to the corpus of the trust created by the Unitrust Agreement.

On March 30, 1971, Harry McClain executed a power of attorney to George E. Sweeney, another of the appellees. Acting under the authority of this power of attorney, Sweeney transferred certain of McClain's assets to several charitable institutions. On April 3, 1972, McClain executed a general warranty deed granting and conveying certain property to George Sweeney and his wife, Clara B. Sweeney (also an appellee).

On March 30, 1971, McClain executed his last will and testament, which instrument named George E. Sweeney as executor and as legatee of his (McClain's) entire estate.[1]

---

1. Actually, the instrument is ambiguous in that it bequeaths McClain's entire estate to Sweeney, but then rather cryptically directs Sweeney to "hand over or pay over the remaining assets of the estate to the charitable institution . . . as may be designated or chosen by him . . ." after final distribution of his estate. The

McClain died on December 20, 1975, and Sweeney applied to the Court of Common Peas of Westmoreland County, Orphan's Court Division, for probate of the will, to which application appellants, who claim to be grandnieces of the decedent, filed a caveat opposing the probate of the will on grounds of lack of mental capacity, undue influence and breach of a confidential relationship by George Sweeney, and other issues. The caveat asserted that appellants are the sole heirs-at-law of decedent and that they, therefore, are entitled to his estate due to the alleged invalidity of the will. Appellants also filed a separate petition challenging the validity of the various inter vivos conveyances of the decedent (the Unitrust Agreement and addition thereto, the power of attorney and transfers pursuant thereto, and the deed), asserting the same grounds of invalidity as asserted in the caveat to the will. They claimed that all of the property conveyed by the allegedly invalid instruments should be returned to the estate.

Answers were filed to the caveat and petition by the executor of the estate (Sweeney) and St. Vincent College, as beneficiary of the trust, denying, *inter alia,* that the caveators-petitioners (appellants) were related to decedent in the proper degree of consanguinity to contest the conveyances and the will, i. e. that appellants had no standing to challenge the validity of the various instruments. A hearing was held for the sole purpose of determining if appellants stood within the necessary degree of relationship to challenge the instruments.

After two days of hearings, the lower court, Judge Earl S. Keim presiding, ruled that appellants did not present sufficient evidence to support appellant's claim of relationship to the decedent, dismissed the caveat and petition and ordered the will of decedent accepted for probate. Exceptions were filed by appellants and dismissed by a court en banc, from which dismissal this appeal was taken. All issues raised in

court below did not reach the issue of the construction of the will, and it is unnecessary for us to attempt to reconcile this apparent inconsistency.

this appeal deal with evidentiary rulings by the lower court, which rulings consistently held that testimony sought to be introduced by appellants to prove their relationship with decedent was inadmissible.

The first contention is that the trial judge misapplied the pedigree (family relationships) exception to the rule against hearsay evidence when he refused to allow Mrs. Florence Lewis to testify as to declarations made to her by the decedent himself concerning his family and relatives. Before an out-of-court declaration can be admitted under the pedigree exception, we have held that three qualifying requirements must be met. In *Garrett's Estate*, 371 Pa. 284, 288–89, 89 A.2d 531, 533 (1953) we stated:

> Declarations as to pedigree are admissible if (1) the declarant is dead; (2) the declarations were made before the controversy arose or as is frequently said, "ante litem motam"; and (3) the declarant was related to the family of which he spoke, and this relationship is proved by evidence dehors the declaration. The rule does not require that the witness who testifies in court must be related to the person whose pedigree is under consideration, but that the declarant whose statements are given in evidence by the witness was so related. *Link's Estate (No. 1)*, 319 Pa. 513, 520, 180 A. 1; *Sitler v. Gehr*, 105 Pa. 577, 596.

Focusing on the third requirement, the trial judge disallowed the testimony of Mrs. Lewis because the declarant's relationship to the family whose pedigree was in question was not proven by evidence dehors (independent of) the declaration itself.[2] Appellants argue that this third requirement should not be enforced in the situation where, as here, the out-of-court declaration is made by the very party (i. e., the decedent) whose own pedigree is in question. We agree.

**2.** Judge Keim stated "It would, therefore, appear . . . that in order for a disinterested witness to be competent to testify as to declarations of a decedent as to pedigree it is necessary to provide initially additional testimony so as to lay sufficient ground for the relationship itself under declarations made thereto."

While the terms of the third element of the exception, as stated in our cases, appear, at first glance, to support the trial court's ruling, the purpose behind the exception and the reasons for the pre conditions to its application clearly demonstrate that there is no rational basis for insisting that the declarant's relation to the family be first proven by evidence from a source other than the declaration where declarant is the decedent whose own family relationships are in question. The pedigree exception, one of the oldest and most widely accepted of the hearsay exceptions, developed because a "[s]pecial need for this type of evidence is found in the general difficulty of obtaining other evidence of family matters." McCormick on Evidence, § 322 (West 1972); Wigmore on Evidence (Chadbourne Revision 1974). This special need has contributed to a lenient attitude by the court in allowing hearsay to prove pedigree, resulting in a trend toward liberal application of the exception. *See* McCormick, *supra* at §§ 322, 326.

However, the necessity of the exception does not obviate the desire to ensure that the testimony be reasonably trustworthy; hence the reason for the third requirement of the pedigree exception. By demanding a demonstration that the declarant is related to the family or person whose pedigree is in issue, the trustworthiness of the declaration is enhanced. This is for the simple reason that (a) one is more likely to know the history of and relations in his own family than some other family's pedigree, and (b) one is less likely to perpetrate untruths (either intentionally or unintentionally) regarding one's own family than some other's family. This reasoning has been effectively expressed by Wigmore as follows:

"[t]he circumstantial indication of trust worthiness . . has been found in the probability that the 'natural effusions' (to use Lord Eldon's often-quoted phrase [3]) of those

3. "Declarations in the family, descriptions in wills, descriptions upon monuments, descriptions in Bibles and registry books, all are admitted upon the principle that they are the natural effusions of a party who must know the truth, and who speaks upon an occasion when his mind stands in an even position, without any temptation to

who talk over family affairs when no special reason for bias or passion exists are fairly trustworthy, and should be given weight by judges and juries, as they are in the ordinary affairs of life." Wigmore, *supra* at § 1482.

■ It should be obvious, given the purpose of the third condition of the exception, that when the declarant *is* the person whose pedigree is being litigated, there is no necessity to apply the condition. In issues involving a person's pedigree, that person and his family relationships are at the core of the controversy. Where the declarant is the decedent whose pedigree is at issue, we *know* that the declarant is necessarily within that core; it is only when the declarant is not the person whose lineage is in question i. e., brother, nephew, etc., that the need arises for independent evidence to establish that the declarant is within the core. The declarant is certainly a member of his own family—what need then to require independent evidence of that fact when it is the declarant's pedigree which is to be determined? Should we require independent evidence to prove that a decedent is related to himself? Such a requirement would clearly be absurd and we decline to impose it in this situation. Therefore, we hold that, when the out-of-court declarant is the very person whose pedigree is in issue, the declarations are admissible under the pedigree exception to hearsay upon a showing that (1) the declarant is dead, and (2) the declarations were made before the controversy arose. Accordingly, the trial court should have permitted Mrs. Lewis to testify to the family relationship of decedent.[4]

Appellants also argue that the trial judge erred in not permitting Mrs. Hazel Baird, one of the appellants, to testify. The judge based this ruling on the Dead Man's Act, 28 P.S. § 322 (1958), which provides, in relevant part:

exceed or fall short of the truth. *Whitelock v. Baker,* 13 Ves. 511, 514 (1807) (Eldon, L.C.).

4. Our prior cases are not inconsistent with this holding, as they all involved declarants who were merely alleged to be family members of the party whose pedigree was in issue—their own pedigree's were not litigated. *See Garrett Estate, supra,* and cases cited therein.

"Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party . . .."

This general disqualification of surviving parties is followed in the same section by several exceptions, one of which appellants claim is applicable to the case at bar, namely the devisavit vel non exception. This exception renders a surviving party competent if "the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." *Id.*

■■■ The trial judge ruled that the devisavit vel non exception was not applicable because the parties to the litigation, although claiming their respective interests in decedent's property by reason of his death, were not of the same class, i. e. appellants claimed by descent and the operation of the intestate laws, while appellees claimed by the will. His reasoning was as follows:

This exception under the Dead Man's Act pertains to the testamentary act of a decedent. In *Dalbey's Estate,* 326 Pa. 285 [192 A. 129] (1937), it is suggested that the purpose of this exception arises out of usual lack of qualified testimony in litigation of this type. At first glance it would appear that this is a rather broad exception; however, upon close scrutiny it is apparent that two very specific instances are the concern of this exception. First, the exception removed the incompetency of witnesses in issues *devisavit vel non* and only in such issues as affect

the beneficiary under an alleged will. The foregoing is not the situation in the instant case.

Second, this exception applies to any dispute of persons claiming by devolution concerning the distribution of the decedent's property. *Gerlach's Estate*, 364 Pa. 207 [72 A.2d 271] (1950). Again, however, it should be noted that this exception does not apply where one of the adverse parties claims by descent while there are other named claimants who take under a Will. In order for the exceptions to apply, the Courts of Pennsylvania have said that the claims must be of the same class. In *Munson v. Crookston*, 219 Pa. 419 [68 A. 962] (1908), it was decided that the exception was inapplicable in that one party claimed by Will and other parties claimed by purchase.

The lower court's first reason is clearly erroneous. The exception is not limited to "issues as affect the beneficiary under an alleged will." We have recognized the applicability of the exception to cases where all parties claim by intestacy. *Arnout's Estate*, 283 Pa. 49, 128 A. 661 (1925). The second reason—that where the opposing parties are not of the same class, the exception does not apply—is also erroneous. While *Munson v. Crookston, supra,* did prohibit the application of the devisavit vel non exception where claimants under a will opposed parties basing their claims on the intestacy laws, and while the "*Munson* rule" was reaffirmed by *Bowman's Estate*, 301 Pa. 337, 152 A. 38 (1930), it (the *Munson* rule) was implicitly overruled by *Dalbey's Estate*, 326 Pa. 285, 192 A. 129 (1937).

In *Dalbey's Estate*, no will was found upon decedent's death even though the facts showed that he had executed one, and letters of administration were granted upon his estate. Subsequently, decedent's widow attempted to have probated a copy of a will which she alleged to be a true and correct copy of her deceased husband's last will and testament. The parties to the appeal were the administrator of the estate and the widow asserting her claim under the will.

The issue, then, was whether the estate should pass to decedent's heirs by intestate distribution or to the widow as beneficiary of the will. The Court stated that the devisavit vel non exception

> renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property. In *Frew v. Clarke,* 80 Pa. 170, this court held that a legatee was competent to prove execution of the will under which he was to take, stating [at p. 179]: "To deny this, is to disregard the specific terms of the act, and to refuse to give effect to the language cited. It was, therefore, held in *Bowen v. Goranflo,* 23 P.F. Smith [73 Pa.] 357, that one who was a party to the issue and both executor and devisee under the will in controversy, was a competent witness." See also *Patterson v. Shrader,* 12 Wkly. Notes Cas. 429. This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness' interest, which reflects only on his credibility. This is especially true where other evidence is at times unavailable, as is frequently the case in litigation of this character, when those related to the testator are the only ones who have knowledge of the circumstances surrounding the execution of his will and the contents thereof.

Even though the dispute was between a claimant under the will and the estate's representative by operation of the intestacy laws, the exception was nevertheless held applicable and, as noted, overrules *Munson* and *Bowman's Estate* by implication.

■ *Dalbey's* recognizes that neither the language nor the purpose of the devisavit vel non exception is served by following the "*Munson* exception" to the exception. The Dead Man's Act renders the witness' testimony competent where the controversy over decedent's property is between parties respectively claiming such property "by devolution

on the death of the owner." The term "devolution" encompasses the transfer of a decedent's estate both by operation of law, *Arnout's Estate, supra,* and by will, *Citizen's National Bank v. McCafferty,* 383 Pa. 588, 119 A.2d 297 (1956) and *Gerlach's Estate,* 364 Pa. 207, 72 A.2d 271 (1950).[5] The terms of the statute, therefore, do not make a distinction between intestate claims vs. testate claims.

Further, the *Munson* rule defeats the purpose of the exception which renders all parties competent in order that the proper tribunal can reach a well-informed determination of the appropriate disposition of the decedent's property in accordance with his wishes. The exception allows the parties to offer testimony to determine just what those wishes were. Indeed, the exception seems merely to recognize that, in cases where parties claim decedent's property by reason of his death, the interests of the parties, while certainly adverse to each other, are not really adverse to the interests of decedent's estate. The interest of the executor or administrator of an estate should merely be to effectuate the intent of decedent. Where, as here, that intent is the very thing which is at issue, we would be needlessly blindfolding the eyes of the law were we to close the mouths of those who are in the best position to shed light on the issue. For the foregoing reasons, we find the trial judge's ruling on the testimony of Mrs. Baird to be erroneous. Moreover, to clarify the law, we hereby expressly overrule *Munson v. Crookston, supra* and *Bowman's Estate, supra.* Because of the erroneous evidentiary rulings, appellants were denied a fair opportunity to establish their claim of relationship to decedent. Accordingly, we reverse and remand for proceed-

5.  Black's Law Dictionary defines "devolution" as "the transfer or transition from one person to another of a right, liability, title, estate, or office." Black's Law Dictionary 539 (Rev'd 4th ed. 1968). "Devolve" is defined thusly: "[t]o pass or be transferred from one person to another; to fall on, or accrue to, one person as the successor of another; as a title, right, office, liability. The term is said to be peculiarly appropriate to the passing of an estate from a person dying to a person living." *Id.* at 540.

446

ings consistent with this opinion.[6]   Decree dismissing appellant's exceptions reversed; each party to pay own costs.

ROBERTS, POMEROY, NIX and MANDERINO, JJ., concur in the result.

**6.**   The remaining issues raised by appellants also involved evidentiary rulings by the trial court which ruled certain evidence inadmissible to show pedigree because a proper foundation had not been laid for its admission.   We assume, without deciding, that these rulings based on insufficient foundation were proper.   However, because of our decision today regarding the testimony of Mrs. Florence Lewis and Mrs. Hazel Baird, appellants should have little difficulty in establishing the proper foundation for the introduction of this evidence of remand.