462 A.2d 750

### In re ESTATE OF Warren STAUFFER, Deceased.

#### Bebeann O'HALLORAN

v.

#### Joseph T. STAUFFER, Administrator C.T.A., Appellant.

Superior Court of Pennsylvania.

Argued Nov. 8, 1982.

Filed June 24, 1983.

Petition for Allowance of Appeal Granted Nov. 11, 1983.

Donald H. Melaney, Pittsburgh, for appellant.

Edward C. Milburn, Pittsburgh, for appellee.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

CAVANAUGH, Judge:

Warren C. Stauffer died on December 8, 1979 leaving a will executed less than three months before his death. The sole beneficiary named in his will was his brother, Joseph T. Stauffer, to whom letters of administration c.t.a. were granted by the register of wills. The appellee herein, Bebeann O'Halloran, contested the will and filed a petition for citation sur appeal from the decree of the register. The appellee claimed that the will was not signed by the decedent and that the signature thereon was forged and that the decedent lacked testamentary capacity. Shortly after filing the petition for citation sur appeal the appellee filed an election to take against the decedent's will on the ground that she was the surviving widow. The matter came on for hearing before Judge Rahauser and the testimony was directed solely to the issue as to whether the appellee was the common law spouse of the decedent. No testimony was introduced concerning the issue of fraudulant signing of decedent's will or lack of testamentary capacity. The court below dismissed the appeal from probate and an appeal was not taken from that determination. The court decided that the appellee had sustained her burden of proving a common law marriage and confirmed her election to take against the will. The exceptions of the administrator c.t.a. were dis-

missed and he has appealed from the order of the court below.[1]

The first issue is whether the appellee, Bebeann O'Halloran, was competent to testify as to her status as the common law wife of the decedent, Warren Stauffer. Ms. O'Halloran was permitted to testify over the objections of counsel for the administrator c.t.a. that she and the decedent entered into a common law marriage on July 26, 1970, while driving to Geneva-on-the-Lake. The testimony by Ms. O'Halloran was as follows:

Q. Was there anything which transpired on that trip?

A. He asked me to be his wife, and I said I would.

Q. Do you recall his exact words?

A. Yes, he said, "Will you be my wife?"

Q. And your response was what?

A. "I sure will."

Q. Did you two exchange gifts at that time?

A. He gave me this ring.

Q. The ring you have on your finger now?

A. Yes.

Q. Have you worn it continuously to this day?

A. I kept it in my rosary case in my purse at all times, and I started wearing it when I was carrying Roselyn, when we told everybody we were married.

Q. Why did you not take out a marriage license and have a formal ceremony?

A. His mother threatened him that she would leave the house to the grandchildren.

Q. Was the house still in her name?

A. Yes.

Ms. O'Halloran also testified that she started using the name Stauffer when she was pregnant with her daughter,

---

**1.** With respect to the exceptions to the adjudication, the court below was evenly divided; Judges Rahauser and Schwartz voting to dismiss the exceptions and Judges Zavarella and Watson dissenting on the basis that the appellee was not competent to testify and that the evidence did not sustain the burden of proving a common law marriage.

Roselyn, who was born on January 28, 1974. The decedent was Roselyn's father. Further, appellee's driver's license, credit cards and bank accounts were in the name of Bebeann Stauffer, although she used the name O'Halloran at the Veterans' Hospital where she was employed as a licensed practical nurse. Appellee testified that she and the decedent announced that they were married in the summer of 1973. She subsequently referred to Warren Stauffer as her husband and Warren likewise acknowledged her as his wife. She testified that she moved into Warren's house after his mother died in July of 1977 and lived there until August, 1978, when she moved out because of a disagreement over their daughter Roselyn's going to school. In addition to the testimony by the appellee concerning her status as the common law wife of decedent, there was testimony by several other witnesses that she and Warren acknowledged being married and represented to the community that they were husband and wife.

The first issue that we must deal with is whether Ms. O'Halloran's testimony was admissible in view of Pennsylvania's Dead Man's Statute, Act of July 9, 1976, P.L. 586 No. 142, 42 Pa.C.S.A. § 5930 which is substantially a reenactment of the Act of May 23, 1887, P.L. 158, No. 89. The Act provides in pertinent part:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is

between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

The court below allowed the admission of Ms. O'Halloran's testimony on the basis of the devisavit vel non exception to the Dead Man's Act.[2] The question of whether the alleged surviving spouse may testify to establish her status as a common law wife is not one to which a ready answer is available. In *McGrath's Estate*, 319 Pa. 309, 179 A. 599 (1935) a claim was made to the widow's exemption by one claiming to be the common law wife of a decedent who died intestate. The court held that she could testify and stated at 319 Pa. 315, 179 A. 602: "... nor is there any doubt of the competency of a surviving spouse to testify where, as here, the claim is to be taken by devolution." The court cited the Act of May 23, 1887, P.L. 158, § 5, clause (e), 28 P.S. § 322. *See also, Kennedy v. Rossi*, 182 Pa.Super. 176, 126 A.2d 531 (1956). In *Jacob's Estate*, OC–117–79, Adams County, 1981, unreported opinion by Judge Spicer, which was affirmed by the Supreme Court, Per Curiam, 494 Pa. 135, 430 A.2d 1153 (1981) the lower court stated:

> The hearing on the family exemption occurred November 23, 1979. At the hearing, this Court ruled that Lizette Jacobs was competent to testify to establish her common law marriage to Lloyd Jacobs. The Court interpreted the exception in the Dead Man's Statute, 42 Pa.C.S.A. § 5930, to issues of devisavit vel non and disputes

---

2. As pointed out in *Quein's Estate*, 361 Pa. 133, 150, 62 A.2d 909, 917 (1949):

> In a will contest contestant ordinarily requests the grant of an issue devisavit vel non. This is an ancient legal process, the origin of which has probably been lost in antiquity. According to Burrill's Law Dictionary, Vol. 1, p. 486, these Latin words may be translated "did he devise or not?" or "Will or not will?" which Wooddesson, in his Lectures on the Law of England (Second Edition, Vol. 3, Lecture 59, p. 286) criticises as being "barbarously expressed". The function of this process is to direct a *jury* to find the facts upon which the validity of a will might be determined. As stated by Lord Chief Justice Tindal, in Tatham v. Wright, 2 Russ. & M. 1, 15 (39 English Reports 295, 300) such trial by *jury* "* * * by experience, is found best adapted to the investigation of the truth."* (italics supplied)

between parties claiming by devolution to exempt petitioner from the Act's proscription.

The courts of this Commonwealth do not speak with one voice in dealing with the issue of devisavit vel non and devolution. In *Wagner Estate*, 398 Pa. 531, 159 A.2d 495 (1960) the appellant claimed to be the wife of a decedent by virtue of a common law marriage. She filed an election to take against the will which the lower court struck from the record. On appeal, the Supreme Court held that there was sufficient evidence of a common law marriage but with respect to the testimony of the claimant, the alleged spouse, Justice Bok stated at 398 Pa. 536, 159 A.2d 498:

> In the instant case the decedent is dead and the claimant's lips are sealed by the Dead Man's Act, May 23, 1887, P.L. 158 § 5(e), 28 P.S. § 322.

The court below relied on *McClain Estate*, 481 Pa. 435, 392 A.2d 1371 (1978) in admitting the testimony of the appellee concerning her common law marriage. In *McClain* the decedent left a will under which his estate was bequeathed to an unrelated individual. A caveat was filed to the probate of the will by persons who claimed to be grandnieces, and sole heirs at law of the decedent. The lower court excluded the testimony of an alleged grandniece to establish her relationship to the decedent. The reason that the lower court ruled that the devisavit vel non exception was not applicable was that the parties to the litigation, although claiming their respective interests in the decedent's property by reason of his death, were not of the same class as the alleged grandnieces who claimed by descent and operation of the intestate laws whereas the residuary legatee claimed under the will. The Supreme Court held that the grandniece's testimony fell within the devisavit vel non exception and stated at 481 Pa. 444, 445, 392 A.2d 1371, 1375:

> The Dead Man's Act renders the witness' testimony competent where the controversy over decedent's property is between parties respectively claiming such property "by devolution on the death of the owner." The term

"devolution" encompasses the transfer of a decedent's estate both by operation of law, *Arnout's Estate, supra* [283 Pa. 49, 128 A. 661 (1925)] and by will, *Citizen's National Bank v. McCafferty*, 383 Pa. 588, 119 A.2d 297 (1956) and *Gerlach's Estate*, 364 Pa. 207, 72 A.2d 271 (1950). The terms of the statute, therefore, do not make a distinction between intestate claims vs. testate claims.

The court in *McClain* cited *Dalbey's Estate*, 326 Pa. 285, 287, 192 A. 129 (1937) in which the court stated: "This enactment [the devisavit vel non exception] renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property." The court further stated at 326 Pa. 287, 192 A. 130:

> This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness' interest, which reflects only on his credibility. This is especially true where other evidence is at times unavailable, as is frequently the case in litigation of this character, when those related to the testator are the only ones who have knowledge of the circumstances surrounding the execution of his will and the contents thereof.

In *McClain* the Supreme Court expressly overruled *Munson v. Crookston*, 219 Pa. 419, 68 A. 962 (1908) and *Bowman's Estate*, 301 Pa. 337, 152 A. 38 (1930). In *Munson, supra,* the claimant was the surviving husband, and there was no dispute as to this, and he sought possession of his deceased wife's real estate as a tenant by curtesy, having elected to take against the will. The plaintiffs in an ejectment action claimed under the will. The Supreme Court held that the husband could not testify under the Dead Man's Act as the "claims are of different classes, and they are not within the exception of the statute." 219 Pa. at 421, 422, 68 A. at 963. In *Bowman's Estate, supra,* the widow of the decedent elected to take against the decedent's will. Again, there was no issue with respect to her status as a surviving spouse. The issue was whether she had deserted

her husband and therefore forfeited her right to participate in his estate. The widow testified that the separation was by consent and denied any desertion. The Supreme Court held that she was not a competent witness because of the Dead Man's Act, Act of May 23, 1887, P.L. 158, § 5, clause (e).

In the instant case the appellee claimed a relationship to the decedent as a common law wife and her testimony to establish this relationship should be as admissible as if she were trying to establish a blood relationship.

We recognize that the conclusion we have reached is contrary to that reached by the court in *Zeigler Estate*, 30 Cumberland L.R. 90, 95 (1980) in which Judge Sheely, stated:

> Initially, it should be pointed out that this court holds that the respondent's testimony as to the existence of a common-law marriage contract (i.e., whether or not she is indeed the decedent's spouse and therefore entitled to elect against his will) is barred by the Dead Man's Statute. Section 5(e) of the Act of May 23, 1887, P.L. 158, as amended, 28 P.S. § 322.[1] See also, In Re Estate of Rider, 487 Pa. 373, 409 A.2d 397 (1979); Wagner Estate, 398 Pa. 531, 536, 159 A.2d 495, 498 (1960); Jackson Estate, 29 Fiduc.Rep. 538 (1979); Dennis Estate, 8 Fiduc.Rep. 185 (1958), aff'd. 394 Pa. 296, 197 [147] A.2d 419 (1959). We are fully aware of the case of In Re Estate of McClain, 481 Pa. 435, 392 A.2d 1371 (1978), which was extensively briefed by the parties to this action, but we do not feel that it changes the rules set forth in the above cited cases. (Emphasis in original).

The Probate, Estates and Fiduciaries Code, Act of April 18, 1978, P.L. 42, No. 23, 20 Pa.C.S.A. § 2209, in effect at the time of these proceedings dealt with the election to take against a will and forfeiture of that right and stated: "The surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter." This section of the Probate, Estates and Fiduciaries Code did not prohibit one who alleged to be a common law spouse from

testifying. However, we note that the law has now been changed and this section has been amended. The Act as approved on February 18, 1982 reads in § 2209 as follows:

§ 2209. Surviving spouse as witness.

*A person who is or claims to be the* surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter *other than the creation of his status as the surviving spouse.* (Emphasis added).

It is clear that under the law as it exists today the appellee would not be permitted to testify as to the creation of her status as a common law wife in an election to take against the will of a decedent. Nevertheless, it is our opinion that she was competent to testify under the law at the time the court permitted her to do so.

The remaining issue is whether the testimony, including that by Ms. O'Halloran, was sufficient to sustain her burden that she was the decedent's common law wife and entitled to elect to take against his will. We believe that it was. In entering a marriage contract the parties technically did not use *verba de praesenti* and in the modern view this is not essential as long as the intention of the parties as expressed by their words is that they are married. As pointed out in *Commonwealth ex rel. McDermott v. McDermott,* 236 Pa.Super. 541, 545, 546, 345 A.2d 914, 915, 916 (1975):

The tenuous distinction *verba de praesenti* and *verba de futuro* has long been the subject of criticism. The decisions seeking to distinguish *verba de futuro* from *verba de praesenti* "compel[s] the belief that the distinction is theoretical and utterly unrealistic. If the distinction is to be preserved, there should be borne in mind the obvious truth that although words are the means of expressing the intention of the parties, nevertheless they are not the exclusive means by which intention may be conveyed .... The setting in which the words are uttered, more strongly. than any delicate shading in grammar, reveals the intention of the parties.

The parties intended to be married. There was a satisfactory explanation as to why they did not live together except for a relatively short period of time after the decedent's mother died, as the decedent's mother threatened that she would not leave him her house if he married the appellee. The burden of proving the marriage is on the purported spouse and the law imposes a heavy burden on one who grounds his claim on an alleged common law marriage. *Gavula Estate*, 490 Pa. 535, 417 A.2d 168 (1980). We have carefully reviewed the record and find that the court below was justified in determining the existence of a common law marriage as there was evidence by several witnesses other than the appellee that she and the decedent acknowledged that they were married and represented to the community that they were married.

Order affirmed.