J-A26020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF HERMAN EDWARD RAWLINGS, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: EDWARD D. RAWLINGS, EXECUTOR OF THE ESTATE OF HERMAN EDWARD RAWLINGS | : : : : : : | |
| | : | No. 274 WDA 2018 |

Appeal from the Order January 29, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 02-15-4373

| | | |
|---|---|---|
| IN RE:  ESTATE OF HERMAN EDWARD RAWLINGS, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MARY BELLE RAWLINGS | : : : : : : | |
| | : | No. 329 WDA 2018 |

Appeal from the Order January 29, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-15-4373

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 22, 2019**

Edward D. Rawlings ("Executor"), the son of Herman Edward Rawlings ("Decedent") and executor of Dededent's estate, has filed an appeal in this probate dispute with Mary Belle Rawlings ("Wife"), Decedent's wife.  Wife has filed a cross-appeal.  We reverse and remand for further proceedings.

The trial court offered the following findings of fact:

(1) The Decedent died on June 23, 2015. (N.T. 12/13/17, p. 11)

(2) The initial death certificate listed the cause of death as "dementia". At the request of [Executor], a replacement certificate was issued changing the cause to death to "abdominal aortic aneurysm". (Exhibits 3 and 7) (N.T. 12/13/17, pp. 33, 46)

(3) The Decedent and [Wife] were married for 42 years. Each of them had three children from previous marriages and they had no children together. (N.T. 12/13/17, p. 11)

(4) When they got married, the Decedent and [Wife] agreed "he would stay out of my stuff and I would stay out of his stuff". They had one joint account (the bill paying account) into which they each deposited the same amount of money on the first day of each month. (N.T. 12/13/17, p. 16)

(5) At the time of his death, the Decedent and [Wife] were residing at Longwood at Oakmont, which is a retirement community. (N.T. 12/13/17, p. 10)

(6) [Wife] inherited a sum of money in 2010 when her Stepmother died. (N.T. 12/13/17, p. 18)

(7) [Wife] gave the Decedent a check for $1,000,000 on or about February 22, 2011. (Exhibit 1) (N.T. 12/13/17, p. 19)

(8) The check was deposited into the Decedent's PNC Bank Premium Money Market Account on February 22, 2011. (Exhibit 6) (N.T. 12/13/17, p. 42)

(9) In October, 2014, the Decedent gave each of his children a gift of $100,000. They had not received any large gifts prior to that date. (N.T. 12/13/17, p. 55)

(10) In addition to giving the Decedent the check for $1,000,000, [Wife] gave the Decedent $250,000, which was deposited into his PNC Bank Premium Money Market Account on September 8, 2011. (N.T. 12/13/17, p. 57)

Trial Court Opinion, 4/11/18, at 1-2.

On July 28, 2015, Wife filed a claim against Decedent's estate for $1,000,000.00. On July 13, 2016, Wife filed a petition to show cause seeking the return of the $1,000,000.00 from the estate and from Decedent's children under the Uniform Fraudulent Transfer Act. After preliminary objections were filed, Wife filed an amended petition seeking the relief on the theory of unjust enrichment. The three children filed an answer and new matter and a reply to new matter was filed by Wife. Following discovery, the three children filed a motion for summary judgment, which was denied by the trial court. A one-day trial was held on December 13, 2017. On January 29, 2018, the trial court filed an opinion and order directing the estate to pay Wife $300,000.00. Executor filed a timely appeal and Wife filed a timely cross-appeal. Both parties and the trial court complied with Pa.R.A.P. 1925. The appeals were consolidated *sua sponte*.

Executor raises the following issues for our consideration:

[1.] May a widow seeking payment of a claim from her deceased husband's estate based on an alleged oral understanding testify on her own behalf in violation of the Dead Man's Act (20 Pa.C.S. § 5930)?

[2.] May a widow who offers testimony regarding the basis and legitimacy of her claim against her deceased husband satisfy her burden of proof by clear and convincing evidence when her own testimony and evidence directly contradict her claim[?]

Executor's Brief at 2.

Wife raises the following issues for our review:

1. Did the Trial Court err in finding the estate was to pay [Wife] the $300,000 when a Petition for the Return of money to the

- 3 -

estate was filed against the Decedent's three children who received the money?

2. Did the Trial Court err in finding that the million dollars was significantly depleted at the time of Decedent's death and only awarding $300,000 to [Wife]?

Wife's Brief at 4 (reordered for ease of disposition).

"Our standard of review of the findings of an orphans' court is deferential." *In re Ware*, 814 A.2d 725, 731 (Pa.Super.2002) (citation omitted). "When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Rosser*, 821 A.2d 615, 618 (Pa.Super.2003) (citation omitted), *appeal denied*, 574 Pa. 761, 831 A.2d 600 (2003). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *Ware*, *supra*.

> As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Gumpher*, 840 A.2d 318, 321 (Pa. Super. 2003) (citations omitted).

*Estate of Vernum ex rel. Pratt v. Estate of Vernum ex rel. Wenmoth*, 961 A.2d 181, 184 (Pa. Super. 2008).

Executor first argues that the trial court erred in permitting Wife to offer testimony in this matter. Executor's Brief at 17-24. Executor asserts that the

Dead Man's Act[1] bars Wife from offering her own testimony or any evidence of her own making to support her claim regarding the funds she transferred to Decedent. *Id* at 21. Under the facts of this case, we disagree.

"When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." *Stumpf v. Nye*, 950 A.2d 1032, 1035-1036 (Pa. Super. 2007). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id*. (quoting *Geise v. Nationwide Life and Annuity Co. of America*, 939 A.2d 409, 417 (Pa. Super. 2007)).

> The Dead Man's Act provides:
>
> [I]n any civil action or proceeding, where any party to a thing or contract in action is dead, … neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased … shall be a competent witness to any matter occurring before the death of said party.

42 Pa.C.S. § 5930. Moreover, in *Punxsutawney Mun. Airport Auth. v. Lellock*, 745 A.2d 666 (Pa. Super. 2000), this Court explained:

> The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt

---

[1] 42 Pa.C.S. § 5930.

to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony. In order for a witness to be disqualified from testifying under this statute, [(1)] the deceased must have had an actual right or interest in the matter at issue, [(2)] the interest of the witness must be adverse, and [(3)] the right of the deceased must have passed to a party of record who represents the deceased's interests. Specifically, the application of the Dead Man's Rule requires that the interest of the proposed witness be adverse to the interest of the decedent's estate.

*Id*. at 670.

The *devisavit vel non* exception is one of the exceptions to the Dead Man's Act that is incorporated into the text of 42 Pa.C.S. § 5930. *Pagnotti v. Old Forge Bank*, 631 A.2d 1045, 1046 (Pa. Super. 1993). *Devisavit vel non* translates from Latin to "he (or she) devises or not." Black's Law Dictionary 517 (9th ed. 2009).

"The *devisavit vel non* exception provides that 'witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule.'" *In re Estate of Janosky*, 827 A.2d 512, 516 n.3 (Pa. Super. 2003) (quoting *In re Estate of Gadiparthi*, 632 A.2d 942, 946 (Pa. Cmwlth. 1993)). "This exception applies to disputes involving the transfer of a decedent's estate both by operation of law or by will and renders competent all witnesses claiming decedent's property by reason of [his] death." *Id*.

In *Dalbey's Estate*, 326 Pa. 285, 192 A. 129 (1937), our supreme court stated that the *devisavit vel non* exception:

> renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property. This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness' interest, which reflects only on his credibility. This is especially true where other evidence is at times unavailable, as is frequently the case in litigation of this character.

> "The Dead Man's Act renders the witness' testimony competent where the controversy over decedent's property is between parties respectively claiming such property 'by devolution on the death of the owner.'" *In re Estate of McClain*, 481 Pa. 435, 392 A.2d 1371, 1375 (1978).

*Pagnotti*, at 1046-1047. "[T]he party challenging the competency of a witness[] has the burden of proving incompetency." *Id*. In *Pagnotti*, we clarified the *devisavit vel non* exception to the Dead Man's Act when we defined the term "devolution" to "include the transfer of a decedent's property both by operation of law and by will." *Id*. at 1046-1047.

The dispute in *Pagnotti* involved a bank account originally opened by a mother, who subsequently added her son's name to that account. The signature of both owners was required to withdraw funds from the account. The son subsequently died intestate. The mother attempted to withdraw funds from the account, but the bank refused. The mother sued the bank, alleging that the account was a joint account with a right of survivorship. The bank interplead the decedent's estate, which argued that the account was a tenancy in common and, by operation of law, the estate was entitled to one-half of the proceeds. The estate then filed preliminary objections asserting

that the mother should not be able to testify because she was not a competent witness under the Dead Man's Act. We held that both the mother and the estate were claiming the money by devolution following the death of an owner of the account. We affirmed the trial court's conclusion that the mother was competent to testify under the *devisavit vel non* exception to the Dead Man's Act.

Likewise, the Commonwealth Court, our sister court, reached a similar determination in ***In re Estate of Gadiparthi***.[2] In that case, the Dead Man's Act issue focused on whether Dr. Gadiparthi would be competent to testify that the real property, to which his deceased wife held legal title at the time of her death, was in fact held in trust for him. Dr. Gadiparthi testified that he purchased the land, held equitable title, and no gift to his wife was intended. Dr. Gadiparthi testified that the properties were titled in his wife's name to protect them from creditors in the event of a malpractice suit. The Commonwealth Court held that the *devisavit vel non* exception to the Dead Man's Act applied and that Dr. Gadiparthi was competent to testify.

Similarly to ***Pagnotti*** and ***Gadiparthi***, we agree with the trial court and Wife that her testimony was admissible under the *devisavit vel non* exception to the Dead Man's Act. The instant case involves testimony from Wife that is

---

[2] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***NASDAQ OMX PHLX, Inc. v. PennMont Secs.***, 52 A.3d 296, 308 n.7 (Pa. Super. 2012).

similar to that permitted in the cases discussed above. Wife's testimony is that she received a significant amount of money in an inheritance from a family member and gave $1,000,000.00 to Decedent to be placed into a mutual account dedicated for particular expenses in accordance with Decedent's agreement to place the same amount into the account. In Dr. Gadiparthi's instance he was alleging the creation of a trust in fact. Instantly, Wife is alleging that a constructive trust was established. The consequence is the same in that the decedents held property in trust for someone else and that person may testify in order to establish the nature and character of the trust. Therefore, we conclude that the trial court properly followed precedent as established in *Pagnotti* and *Gadiparthi* and permitted Wife to testify. Hence, Executor's contrary claim lacks merit.

The Executor next argues that the trial court erred in permitting Wife to recover proceeds of the money she had given to decedent because the testimony presented by Wife did not meet the standard of clear and convincing evidence. Executor's Brief at 24-27. Basically, the Executor claims that Wife's evidence actually disproved her claim. *Id*. at 27.

As we stated earlier, "[t]he standard for reviewing an Orphan's Court['s] findings is deferential." *In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citing *In re Estate of Harrison*, 745 A.2d 676 (Pa. Super. 2000)).

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary

support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*Estate of Warden*, 2 A.3d at 571 (quoting *In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa. Super. 2004)).

When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous . . . . If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*Estate of Warden*, 2 A.3d at 571 (quoting *In re Scheidmantel*, 868 A.2d 464, 479 (Pa. Super. 2005)).

Before we address the merits of this issue, we must consider whether Executor has waived review of this claim. Initially, we observe that Executor has failed to specify the point in the record where the alleged inconsistent and

- 10 -

contradictory evidence appears. Executor's bald assertion regarding the testimony offered into evidence by Wife lacks any supporting citation to the record. Thus, Executor has ignored the fact that, as the complaining party, he "has a heavy burden of proof." *Id*.

Pennsylvania Rule of Appellate Procedure 2119 addresses arguments in appellate briefs and corresponding references to the record and provides, in relevant part, as follows:

> **If reference is made to the** pleadings, **evidence**, charge, opinion or order, or any other matter appearing in the record, **the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears** … .

Pa.R.A.P. 2119(c) (emphases added). Similarly, when the finding of a fact is argued, an appellant must refer to the place in the record where the evidence is to be found. *See* Pa.R.A.P. 2119(d) (addressing necessity of a synopsis of the evidence).

It is not the role of this Court to develop an argument for a litigant or to scour the record to find specific evidence to support an appellant's arguments. *J.J. DeLuca Co. Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 411 (Pa. Super. 2012). Therefore, "[w]hen an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal." *Commonwealth v. Harris*, 979 A.2d 387, 393 (Pa. Super. 2009) (citing Pa.R.A.P. 2119(c)).

Here, in the argument portion of his appellate brief, Executor has offered no citation to the notes of testimony in violation of Rule 2119(c). Such violation is striking in a case that asserts a challenge to the credibility of the evidence on the basis of contradictory testimony from witnesses. Specifically, the Executor presented the following argument, which failed to include any citations to the record:

> Judge O'Toole credits [Wife] with credible testimony about why she gave her husband $1,000,000. Whether or not that testimony was credible, [Wife's] unsupported, oral opinion as to why she gave [Decedent] the money must be considered alongside the testimony of the other witnesses she offered who testified to a completely different motivation that would not necessitate repayment of the money.
>
> * * *
>
> [Wife's] evidence fails to even approach this qualitative standard of proof of his claim.
>
> [Wife's] evidence, even allowing for the inadmissible evidence of her own recollections and beliefs, was contradictory and incredible. It was certainly not clear, direct, precise and convincing, as required by law.
>
> [Wife] approximated the costs of care at Longwood. She approximated the monthly cost of aides and the number of days that aides provided services. Her testimony about the actual number of years that she and [Decedent] resided at Longwood was contradicted by [Executor], her own witness. Her story about why she wanted the money to be returned varied among the witnesses she presented in her own case.

Executor's Brief at 26-27.

As illustrated above, in contradiction to Rule 2119(c), Executor has failed to comply with the mandatory briefing requirements by neglecting to

reference the place in the record where evidence of the facts now claimed was presented to the trial court. It is not our role to scour the record for the specific evidence that could possibly support Executor's argument. *J.J. DeLuca Co. Inc.*, 56 A.3d at 411. This Court has consistently held that failure to comply with Rule 2119(c) results in the waiver of the issue on appeal. Executor's failure to comply with Rule 2119(c) compels our conclusion that this issue is waived.

We next turn to the cross-appeal filed by Wife. Wife first argues that the trial court should have directed Decedent's three children to repay funds to the estate that were distributed to them prior to Decedent's death. Wife's Brief at 10-11. Wife asserts that the "trial court erred in ordering the Estate to pay [Wife] the amount the court [o]rdered. The Petition was filed against the three children who received the money which nearly depleted the estate in an attempt to deny [Wife] her money." *Id*. at 11. Wife concludes that "[Decedent's] children received the money from [Decedent] before he died and they should be the ones to repay the estate so [Wife's] claim can be paid." *Id*. In addition, Wife notes that "the trial court has requested in its opinion that the case be remanded to it to direct [Decedent's] children to return the improperly distributed funds to the estate." *Id*.

Specifically, the trial court addressed Wife's claim as follows:

> [Wife's] issue claims that the [trial c]ourt erred in directing only the estate to pay the claim to [Wife] and not granting the Petition requesting that the adult beneficiaries return the funds that were improperly distributed to them, during the Decedent's

- 13 -

lifetime, to the estate. As this specific issue was not addressed to the [c]ourt at the time of the hearing, the [c]ourt was not aware that the funds in the estate would be insufficient to satisfy [Wife's] claim. Assuming *arguendo* that such is true, with the [c]ourt having no independent knowledge of such, the case should be remanded on this sole issue to permit the [c]ourt to amend the Order to direct the adult beneficiaries to return the improperly distributed funds to the estate."

Trial Court Opinion, 4/11/18 at 5-6. Thus, the trial court acknowledged that it erred in failing to address the specific request presented in Wife's petition.

Our review of the record reflects that, on July 13, 2016, Wife filed a "petition for rule/citation to show cause why funds should not be returned to the estate," in which she requested that the trial court direct that the funds that were transferred to Decedent's children be returned. Petition, 7/13/16, at 3-4. On July 18, 2016, the trial court entered three individual orders directing each of Decedent's children to show cause why they should not be required to return money to the estate, and set a status conference date on the matter. Orders, 7/18/16. On September 30, 2016, Wife filed an amended petition to show cause, which again requested that the trial court direct that the funds that had been transferred to Decedent's children be returned to the estate. Amended Petition, 9/30/16, at 3. On November 3, 2016, Decedent's children filed an answer and new matter, and Wife filed a reply to the new matter on November 18, 2016. On December 13, 2017, the trial court held a hearing and issued its order on January 25, 2018. In its order the trial court directed the estate to pay Wife $300,000.00, but neglected to address Wife's request that Decedent's children be directed to repay the estate.

These facts of record indicate that the trial court, in issuing the order currently on appeal, utterly failed to address Wife's pending petition requesting that Decedent's children be directed to repay the funds. Accordingly, because the trial court failed to make a ruling on Wife's pending petition, we are constrained to honor the trial court's request and remand this matter to the trial court for further proceedings on Wife's petition.

Wife last argues that the trial court erred in finding that the $1,000,000.00 was significantly depleted at the time of Decedent's death and awarding Wife $300,000.00. Wife's Brief at 9-10. Wife notes that the trial judge found that the "Longwood Fund" was significantly depleted, but she claims that "[t]here is no evidentiary support that any money was spent [by Decedent and Wife] from the Longwood Fund." *Id*. at 9. Wife continues "[t]here is nothing in the record to support the factual conclusion reached by the trial court that the funds were significantly depleted and that only $300,000 was left." *Id*. Moreover, Wife states that "[t]here was no evidentiary support that any money was spent [by Decedent and Wife] from the Longwood Fund." *Id*. Likewise, Executor agrees that "[t]here is no evidence or explanation for [the trial court's] calculation of $300,000 as a proper measure of damages. It is simply an arbitrary number." Executor's Brief at 30.

The trial court addressed Wife's claim as follows:

> [Wife] claims that the [c]ourt erred in finding that the $1,000,000 was significantly depleted as of the Decedent's death.

- 15 -

As the testimony regarding the expenses incurred by [Wife] and the Decedent to reside at Longwood, along with the testimony regarding the deposits into the joint account was minimal, the [c]ourt had no choice but to assume that over the fifty-two (52) month period between February 2011 (when the check was given to the Decedent) and June 2015 (when the Decedent died) the funds had been greatly depleted. It was incumbent upon counsel to provide the [c]ourt with details as to the expenses and deposits. Counsel did not do so, which resulted in the [c]ourt making its own calculations and concluding that the remaining funds would be $300,000.

Trial Court Opinion, 4/11/18, at 5.

Our review of the record reflects that the parties are correct in their assessment of the dearth of evidence to support the specific damages found by the trial court. Accordingly, we are constrained to reverse the order awarding Wife $300,000.00, and we remand for the trial court to prepare an adjusted calculation.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2019